UNITED STATES of America,

v.

**Walter A. FORBES and E. Kirk Shelton.**

**Crim. No. 01–140(WHW).**

United States District Court, D. New Jersey.

May 29, 2001.

Michael A. Guadagno, Assistant U.S. Attorney, Newark, NJ, Barry S. Simon, Washington, DC, for Walter Forbes.

Martin J. Auerbach, New York City, for E. Kirk Shelton.

## OPINION

WALLS, District Judge.

Defendant Walter A. Forbes moves to return this matter to the Clerk of the Court for random reassignment and for discovery of the contents of three sealed affidavits filed by the government in the civil *In re Cendant* litigation, under Master File Civ. No. 98–1664(WHW) and of the court's assignment procedures for related criminal cases. Oral argument was heard April 6, 2001. The motion is denied.

## BACKGROUND

This Court has handled the *In re: Cendant Corporation Securities Litigation,* consisting of various consolidated civil cases related to accounting irregularities at Cendant and CUC, since early 1998. The litigation has been consolidated in Master File Civ. No. 98–1664. On June 14, 2000, the government filed criminal informations against three former CUC/Cendant employees, Cosmo Corigliano, Anne Pember and Caspar Sabatino. Those criminal matters were assigned to this Court as related to the pending civil litigation. On the same day, those three individuals plead guilty and entered into cooperation agreements with the government.

On February 28, 2001, Walter A. Forbes ("Forbes") and E. Kirk Shelton ("Shelton") were indicted on one count of conspiracy and one count of wire fraud. The same day, the government forwarded a "related-case" letter to the Clerk of the Court which enclosed the Indictment against the defendants Forbes and Shelton. The one-page letter stated:

The charges contained in the Indictment arose out of the same events charged in an Information, *United States v. Cosmo Corigliano,* Crim. No. 00–379, which was assigned to the Honorable William H. Walls. Cosmo Corigliano plead guilty to conspiracy and wire fraud, and he is a potential witness against the above-

named defendants. He has not yet been sentenced.

Pursuant to Local Criminal Rule 18.1, this letter is submitted to inform you of the relationship of these cases so that you may determine whether this Indictment should be considered a related case to the case against Cosmo Corigliano and assigned to Judge Walls in the interests of judicial economy.

February 28, 2001 letter from Michael Guadagno, Chief, Fraud and Public Protection Division, to Melvin Jackson, Deputy Clerk ("February 28 letter"). This letter is not contained in the Clerk's file for this matter. The Clerk's office assigned this case to this Court, after inquiring whether the Court would agree to handle the matter as a related case.

Defendant Forbes moves to have this criminal matter placed back into a random assignment wheel to be reassigned.[1] Forbes argues that the government's related case letter and the assignment of this case to this Court violates Local Civil Rule 18.1. Forbes contends this Rule requires random assignment of cases to judges throughout the District without regard to whether the matter is related to another pending matter. Forbes relies on the distinction between Rule 18.1 and Local Civil Rule 40.1(c): The latter explicitly allows the assignment of civil cases to judges, pursuant to specified procedures, whereas the Criminal Rule has no similar explicit provision. Forbes also argues that the assignment of this matter to this Court is in violation of the Rule because the only reason it was assigned here is because of the *Corigliano* matter, which was assigned to the Court apparently because of the related pending civil litigation. Forbes argues that the *Corigliano* matter should never have been assigned to this Court because even under the non-binding commentary to Local Rule 18.1, there is no procedure to assign a criminal matter to one judge on the basis of a "related" pending civil matter. Forbes also protests that the Clerk's files for both the *Corigliano* matter and this matter contain no records to indicate how the matters came to be assigned to this Court. The February 28 letter from the government is not filed in the Clerk's file; no similar letter appears in the Clerk's file for the *Corigliano* matter. Apparently, Forbes' counsel made an inquiry of the Clerk's office for information related to the assignment system and was told that such information is not public. Forbes objects to there being no record in the Clerk's file of the February 28 letter. He argues that the Notice of Allocation dated March 1, 2001 states only that the indictment had been allocated to Newark in furtherance of the provisions of the Speedy Trial Act and that the action had been assigned to this Court. The Notice does not disclose the existence of the February 28 letter and does not indicate that the Clerk considered this matter a "related case" to the *Corigliano* matter. Accordingly, Forbes requests discovery into the assignment procedures used in this case and in criminal matters in this District generally.

Forbes further contends that the government's "causing" the assignment of this matter to this Court creates an appearance of impropriety and violates his Due Process rights. Forbes maintains that certain *"ex parte"* communications between the government and this Court create an appearance of impropriety. He further argues that the "improper assignment" of this matter prejudices him "by depriving him of his right under the Local Rules to have his case randomly assigned on a state-wide basis, and by permitting the

---

1. Shelton does not join in the motion.

government to select a presiding judge with whom it has repeatedly communicated *ex parte* regarding this criminal matter." Forbes Br., at 1.

Forbes counsel asserts the following *"ex parte* communications" between the government and this Court took place:

(1) a personal meeting between the Court and the assistant U.S. Attorney in charge of the criminal investigation which purportedly took place on July 9, 1999;

(2) the government's submission of a sealed affidavit on July 20, 1999 in support of a motion to stay discovery in the civil matter pending the outcome of the then pending criminal investigation;

(3) another sealed affidavit filed by the government on September 6, 2000 in support of a second motion to stay civil discovery pending the outcome of a related criminal investigation;

(4) the February 28, 2001 "related-case letter" to the Clerk of the Court; and

(5) a March 1, 2001 Sealed Affidavit submitted in support of the government's motion to stay discovery as to forty-four individuals who the government expected will be witnesses in the criminal proceeding against Forbes and Shelton.

### DISCUSSION

#### A. The Alleged *"Ex Parte* Communications"

Forbes states that this Court had an *"ex parte* " meeting with the government attorney on July 8, 1999. As evidence that this meeting occurred, Forbes cites a transcript from a July 8, 1999 hearing of a motion in the civil *In re Cendant* litigation pending the completion of a then pending criminal investigation. The transcript indicates that this Court stated it would hold an informal meeting with the AUSA who was handling the government's criminal investigation, the following day, without the presence of other counsel in the civil *In re Cendant* matter. *In re Cendant,* July 8, 1999 Transcript, at 4.

The government submitted a Sealed Affidavit of Robert J. Cleary ("Cleary Affidavit") on July 20, 1999, in support of the government's motion to stay all discovery in the civil matter. Forbes cites the government's memorandum of law submitted in support of that motion and infers based on the discussion therein that the Cleary Affidavit discussed the subjects and targets of the criminal investigation, the status of those individuals as witnesses and/or cooperators, their role in the civil case, the progress of the criminal investigation, and the government's expectation of the possible effect of a "resolution" of the criminal case upon the civil proceeding. This Court granted the government's motion in part, by ordering a stay of testimonial discovery of any person who was then a "target" of the criminal investigation, and denied the remainder of the government's request.

On September 6, 2000, after the informations were filed against Corigliano, Pember and Sabatino, the government filed another motion to stay discovery in the civil matter, but only as to the three individuals who had been charged in those informations. The government submitted a Sealed Affidavit of Paul Weissman ("Weissman Affidavit") in support of that motion. Forbes speculates based upon the government's memorandum of law that the Weissman Affidavit appears to contain information concerning the filing of charges against additional defendants, the role of Corigliano, Pember and Sabatino as "key witnesses" in the case against additional defendants, the substance of their anticipated testimony and the progress of the

criminal investigation. This Court granted the government's motion to stay testimonial discovery as to those three individuals for six months.

After the indictment was filed against Forbes and Shelton, the government filed another motion to stay discovery in the civil *In re Cendant* matter, this time with regard to forty-four witnesses it expected to testify in the criminal matter against Forbes and Shelton. In support of that motion, the government filed the Sealed Affidavit of John Carney,[2] which Forbes infers contains information about the government's preparations for trial against Forbes and Shelton and the status of the 44 witnesses as "key witnesses." This Court granted the government's motion to stay testimonial discovery as to those 44 witnesses. The Court also granted the cross-motions by Forbes and Shelton to stay testimonial discovery as to them in the civil litigation until resolution of the criminal matter.

Forbes' counsel requested that the government provide copies of the sealed affidavits, in addition to the related-case letters sent in this and the *Corigliano* matter. Although the government provided a copy of the letter in this matter, it has not provided copies of any of the other requested items.

▅▅ An *ex parte* communication is a communication which takes place between one party in a matter, without the presence of opposing party or parties, with or without notice to such other party or parties. *Black's Law Dictionary* defines "*ex parte*" as follows:

On one side only; by or for one party; done for, in behalf of, or on the application of, one party only.

A judicial proceeding, order, injunction, etc., is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested.

*Black's Law Dictionary* (6th ed. Deluxe 1990), at 576. Counsel for Forbes agreed at oral argument that *ex parte* means a communication between one party and the court in the absence of another party. As the Court explained at oral argument, by its nature, this term contemplates that one actually be a party to a matter before the communication of another party is considered "*ex parte.*" Here, Forbes was not a "party" to a criminal matter until February 28, 2001, nor was he "adversely interested" by virtue of his being a criminal defendant until that time. The "communications" which occurred on July 9, 1999, July 20, 1999, and September 9, 2000, were not "*ex parte*" with regard to Forbes as a criminal defendant within the traditional meaning of that phrase.[3] As this Court stated at oral argument, Forbes does not have standing to object to the communications which allegedly occurred before February 28, 2001. Similarly, Forbes has no standing to object to the assignment of the *Corigliano* case to this Court. He was not a "party" in that matter, so any "related case letter" the government may have sent to the Clerk of the Court before the assignment of the *Corigliano* matter was not an "*ex parte*" communication with regard to Forbes.

▅▅ Even if Forbes did have standing to object to the earlier communications,

---

2. Forbes' brief refers to an affidavit of "John Cleary," but the Court presumes it means John Carney.

3. Forbes had been named as a defendant in the civil matter at the times of those communications, but his counsel never objected to the government's use of sealed affidavits in support of its motions to stay discovery.

this Court finds that none of those communications requires disclosure to defense counsel. Nor do any such alleged communications portend any identifiable prejudice to Forbes. None of those communications was relevant to this proceeding, or to the assignment of this matter. Those communications had no effect on this matter but only upon the civil matter, in which Forbes was represented by counsel. The first communication, the sealed affidavit of Robert Cleary, was submitted in support of the government's motion to stay discovery in the civil matter. The Court denied most of the government's request, although it granted a stay of discovery as to anyone who was then a target of the criminal investigation. This Court relied upon nothing in the Cleary Affidavit to arrive at this determination. Similarly, the Weissman Affidavit was submitted in support of the government's motion to stay discovery as to Corigliano, Pember and Sabatino for a period of six months. The Court granted the motion but did not rely upon anything contained in the government's affidavit, save for information revealed publicly by the government during oral argument with regard to the status of the pending criminal investigation. Moreover, it has been observed that it is not improper for courts to rely upon *ex parte* affidavits by the government when necessary to protect the secrecy of grand jury proceedings. See *In re Grand Jury Subpoena*, 223 F.3d 213, 216 (3d Cir.2000) (courts routinely accept *ex parte* affidavits from government to make a preliminary showing that items subpoenaed are relevant to the investigation being conducted; such *ex parte* communications are necessary to protect grand jury secrecy). In fact, much like an affidavit in support of a subpoena, the affidavits here did not discuss the merits of any criminal matter but only the status of pending criminal investigations.[4] Accordingly, they were properly filed under seal to ensure the secrecy of the investigative process, and the defendant here has made no showing to overcome that need for secrecy of the grand jury process which would justify disclosure of the contents of those affidavits.

As to the government's March 1, 2001 sealed Affidavit of John Carney, this Affidavit was not considered by the Court in its determination to stay discovery and in no way prejudiced any interest of Forbes. In addition, while Forbes became a defendant in this matter when the indictment was returned on February 28, the February 28 letter itself had no prejudicial impact on Forbes. In fact, as discussed below, the only ruling this Court has made so far in this matter was to the benefit of Forbes, the grant of Forbes' cross-motion to stay testimonial discovery as to him in the civil matter pending resolution in this matter.

█ This Court does not recall whether any alleged meeting between the Court

---

4. In contrast, the cases cited by Forbes in support of his argument that government *ex parte* communications with a court are improper are those in which the government's communication conveyed information about the merits of the criminal matter to the court, which patently prejudiced the defendants. See *United States v. Earley*, 746 F.2d 412, 413, 415–16 (8th Cir.1984) (United States attorney submitted to judge a "trial brief" which outlined expected trial testimony of proposed witnesses, without making such brief available to defense counsel); *Grieco v. Meachum*, 533 F.2d 713, 719 (1st Cir.1976) (prosecuting attorney furnished court with trial memoranda not shared with defense counsel which contained statements of expected testimony); *Haller v. Robbins*, 409 F.2d 857, 859 (1st Cir.1969) (before sentencing, prosecutor informed court of hearsay statement made by defendant while in custody, in the absence of defendant and his counsel). Here, none of the information contained in any sealed affidavit concerned the substance of any witness's proposed testimony.

and the government's attorney took place on July 9, 1999; nor does it recall the substance of any such communication. In 2001, this Court did have a communication with the AUSA on the matter, immediately after oral argument was heard with regard to the government's motion to stay discovery as to certain witnesses in the civil matter, pending resolution of this matter. The Court asked the AUSA when he expected the defendants Forbes and Shelton to be arraigned, because (1) the indictment had been returned weeks earlier; (2) the Court had heard nothing from any defense counsel regarding representation of the defendants and (3) no arraignment had yet been scheduled. That one communication had no impact on Forbes, nor can it be argued to have prejudiced him in any way.

Forbes has made no showing why he should be entitled to discovery regarding the content of the three sealed affidavits filed by the government. Nor has he demonstrated a threat of prejudice or an appearance of impropriety by the government's submission of sealed affidavits in the civil matter, because the Court did not rely upon them in ruling on the three motions to stay, except to the extent information contained therein was revealed publicly by the government in open court. Although the Court does not recall any meeting with the government's attorney on July 9, 1999, it finds that to the extent such a meeting did take place, such had no bearing on this matter or pose any potential prejudice to Forbes. The Court sees no plausible basis to allow the defendant a fishing expedition in the absence of a showing of some harm or threat of harm from these alleged communications.

## B. Propriety of Assignment to this Court

### 1. *Local Rule 18.1*

District courts are vested with broad discretion on the assignment of cases:

The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.

28 U.S.C. § 137. Local Criminal Rule 18.1 of the Local U.S. District Court Rules governs the assignment of criminal cases. That rule states:

All criminal cases shall be assigned by the Clerk to Judges throughout the District without regard to where the alleged offense arose. The vicinage where the assigned judge is sitting shall be the place of trial and of all proceedings in the cause, unless changed by order of the Court.

L.Crim. R. 18.1.

■■■ Contrary to Forbes' assertion that this Rule requires mandatory, random assignment of cases to judges, this Court interprets this rule to require only that cases be allocated among the vicinages— Newark, Camden or Trenton-within the District, not random assignment among the judges. The Court appreciates that a random assignment wheel is used once a case is allocated to a particular vicinage within the district. However, commentary to the Local Rule states:

On rare occasions in extraordinary circumstances, consideration may be given to the relation of a new case to a pending indictment if, in the discretion of the Clerk and the Judge to whom the pending case is assigned, such relationship is warranted by facts submitted in writing by the United States Attorney or an Assistant United States Attorney of supervisory rank.

Lite, N.J. FEDERAL PRACTICE RULES, Comment 2 to L.Crim. R. 18.1 (Gann 2001). This Court is aware that the Commentary to the Rule is not binding on

this Court; however, this commentary accurately describes the practice in this District. As stated, Forbes objects to the assignment of this matter to this Court because it allegedly violates Local Criminal Rule 18.1 and on Due Process grounds. To support his argument that the assignment violated the Local Rule, Forbes references the Local Civil Rules, which do contain an explicit provision for assignment of a "related case." Forbes Br., at 20, citing Local Civ. R. 40.1(c). Because the text of the Criminal Rule does not contain any similar provision, Forbes contends that the Rule forbids assignment of related cases to a judge handling the related case. This argument is unpersuasive: As the Court stated at oral argument, the absence of a provision *explicitly allowing* related case assignments does not necessarily imply that such assignments are *prohibited.* And as stated, the commentary to Local Rule 18.1 provided by Allyn Z. Lite, former Clerk of the Court, accurately states the practice in this district.[5]

This Court finds that the case was assigned consistent with the permissive language of the commentary to the Rule: The government's February 28 letter stated that the present indictment arose out of the same events charged in the *Corigliano* information, assigned to this Court. It further stated that Mr. Corigliano is a potential witness against Forbes and Shelton. The Court finds this information suffices to establish that this matter is related to the *Corigliano* matter. Although the Commentary references a pending "indictment," and the *Corigliano* matter is pending pursuant to an information rather than an indictment, such does not affect this determination. As Forbes points out, the commentary is not binding on the court. Consequently, it cannot be construed to set forth strict requirements.[6] Forbes also protests that the February 28 letter referenced no extraordinary circumstances but only "judicial economy."[7] The letter is correct in that this assignment promotes judicial economy: Because this Court is familiar with the related criminal matters as well as the civil matter, the Court may dispose of motions and other administrative matters in a more efficient manner. Furthermore, the Court finds that the circumstances of this matter are both rare and extraordinary: The accounting fraud at Cendant and CUC is alleged to have involved over $500 million in overstate-

---

5. Forbes further argues that two other matters *Securities and Exchange Commission v. Corigliano, et al.*, Civ. A. No. 00–2873, and *Securities and Exchange Commission v. Forbes and Shelton*, Civ. A. No. 01–0987, filed June 14, 2000 and February 28, 2001, respectively, were assigned to a different judge. He argues that (1) the *SEC v. Corigliano* matter was forwarded to the Clerk's office by a June 13, 2000 cover letter which stated the SEC action was related to the civil *In re Cendant* as well as criminal proceedings; and (2) the Civil Cover Sheet for the SEC action against Shelton and Forbes states that the case is related to *SEC v. Corigliano, et al.* Forbes speculates that these assignments make the existence of the related case practice in criminal matters "dubious." This Court is unaware of the circumstances leading to the assignment of the two SEC actions, but in light of the above discussion, the Court concludes that the assignment of that matter to another judge does not compel a finding that this matter was improperly assigned to this Court.

6. Indeed, Forbes' argument that the government failed to meet the "criteria" listed in the commentary is inconsistent with his position that the Commentary to the Rules is nonbinding and should not be interpreted to allow related case assignments of criminal matters.

7. Because the Court the commentary is nonbinding, it is not clear that the government is required to show "extraordinary circumstances" in all related case letters as opposed to mere promotion of judicial economy. This Court need not answer that question because the Court finds that such "extraordinary circumstances" do exist.

ment of revenues and is alleged to have caused investors over $14 billion in damages. The civil matter has been pending for almost three years; the criminal matter against Corigliano, Pember and Sabatino is still pending, because those defendants have not yet been sentenced. There are over 44 witnesses from within CUC/Cendant's accounting department who are expected to testify in this matter. This Court will be required to sentence Corigliano, Pember and Sabatino and may have to take into account whether they provided "substantial assistance" to the government in its prosecution of these two defendants. Moreover, as this Court observed at oral argument, it would be unfair to the defendants in this matter if there should be inconsistent results within the district as a result of the assignment of the different cases to different judges. Such circumstances cannot be anything but extraordinary. The court finds that there has been no violation of Local Criminal Rule 18.1.

### 2. *Due Process and Appearance of Impropriety*

Forbes further maintains that the government's role in "causing" the case to be assigned to this Court creates an appearance of impropriety that must be rectified by reassignment and also implicates Mr. Forbes' Due Process rights. Forbes argues that this "improper" assignment lacks " 'the appearance of impartiality that is required to maintain the confidence of the public and the accused in the system.' " Forbes Br., at 25, citing *Tyson v. State*, 619 N.E.2d 276, 300 (Ind.Ct.App.1993).

Forbes cites a number of cases that support the general proposition that a defendant is entitled to have the decision of judicial assignment "free from bias or the desire to influence the outcome of the proceedings." Forbes Br., at 27, quoting

*Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir.1987), and citing *Pearson*, 203 F.3d at 1254; *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir.1995). However, Forbes does not present any evidence that the government's February 28 letter was in any way motivated by a desire to influence the outcome of the proceedings, evidence that the Clerk's assignment was motivated by bias or an intent to influence the outcome, or that this Court is in any way biased against Forbes or in favor of the government. Nor does the evidence clearly indicate the government "caused" the assignment, as evidenced by the Clerk's decision not to assign the two related SEC matters to this Court. Rather, the government simply brought the related case to the attention of the Clerk, so the Clerk could decide whether the matter was a related case.

■ The Court has reviewed the cases cited by Forbes in support of the contention that his Due Process rights are implicated by the government's alleged involvement in the assignment of this matter and concludes that Forbes has made no showing of any harm to his Due Process rights. The cases which discuss this issue overwhelmingly conclude that due process concerns are not implicated by the assignment of judges in a criminal matter unless the criminal defendant can point to some specific prejudice. *See generally, United States v. Gallo*, 763 F.2d 1504, 1532 (6th Cir.1985) (" 'a defendant does not have the right to have his case heard by a particular judge,' does not 'have a right to have his case selected by a random draw,' and 'is not denied due process as a result of the error unless he can point to some resulting prejudice.' ") (quoting *Sinito v. United States*, 750 F.2d 512 (6th Cir.1984)); *Sinito*, 750 F.2d at 515 (same); *United States v. Erwin*, 155 F.3d 818, 825 (6th Cir.1998) ("Even when there is an error in the pro-

cess by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error unless he can point to some resulting prejudice.").

In *United States v. Pearson*, 203 F.3d 1243, 1258 (10th Cir.2000), the defendant claimed that the government had manipulated the consolidation of three defendants's criminal matters into one superseding indictment, and in listing the names of the defendants in a particular order, intentionally manipulated the assignment of the matter to a particular judge. The defendant further alleged that such manipulation violated his due process rights. *Pearson* referred to *State v. Simpson*, 551 So.2d 1303, 1304 (La.1989), in which a defendant filed an application to reassign his case to another judge, because the assignment procedures allowed the government to choose the judge who would preside over criminal cases. The Louisiana Supreme Court granted the requested writ, and reasoned:

> To meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney to choose the judge to whom a particular case is assigned.

551 So.2d at 1304. The Fifth Circuit in *Pearson* contrasted *Simpson* with most other federal decisions that "prosecutorial involvement in judicial assignments have not found due process violations." 203 F.3d at 1257. *Pearson* also discussed the decision of *Tyson v. Trigg*, 50 F.3d 436, 439–42 (7th Cir.1995), *cert. denied*, 516 U.S. 1041, 116 S.Ct. 697, 133 L.Ed.2d 655 (1996), an appeal of the denial of a petition for a writ of habeas corpus, brought by Mike Tyson, former heavyweight champion. In Indiana at the time Tyson was tried, the grand juries were each assigned to a particular judge. A prosecutor was effectively able to select a judge by selecting the grand jury to which to present the case. 50 F.3d at 438–439. Tyson alleged that the prosecutor in his case—a rape case—selected the grand jury assigned to the judge who was a former sex-crimes prosecutor. *Id.* at 439. Tyson did not claim that the judge was actually prejudiced against him but challenged the assignment because it "greatly stacked the deck against the defendant as to make the trial unfair—so unfair as to deny due process of law." *Id.* The court found it notable that no defendant had ever challenged the legality of this system. *Id.* at 440. Although the Indiana Court of Appeals affirmed the conviction, it cautioned that this system lacked the appearance of propriety and impartiality, and Indiana's system was soon abandoned.

However, the *Tyson* Court also stated that the criminal justice system is one of an "aggregate of imbalances," in which the prosecution has advantages such as the use of grand jury and limited discovery, while the defendant has the benefit of the strict reasonable doubt standard. *Id.* at 440–441. It also found that there was no evidence presented as to why the prosecutor selected the judge. It determined that if the prosecutor had proceeded randomly then the only objection to the system is that it lacks the appearance of impartiality, and such an objection would be insufficient to require a new trial. *Id.* at 441. *Tyson* concluded, "The right to a judge who is free from the mere appearance of partiality is not part of due process at all, let alone a fundamental part." *Id.* at 442. Accordingly, no due process violation was found. *Id.*

The *Pearson* court decided that *Tyson* was not directly applicable to a case in which a "prosecutor succeeds in having a case assigned to a particular judge due to some perceived advantage that judge will afford the government." 203 F.3d at 1259. Accordingly, that court assumed, without deciding, that the Due Process clause of the Fifth Amendment "entitles [a defendant] to an impartial method of judicial assignment." *Id.* However, it determined that if a violation had occurred, it was necessarily harmless—because the defendant did not allege any actual prejudice as a result of the assignment—and did not require reversal of the conviction. *Id.* at 1262.

Forbes cites *Simpson* for the principle that felony criminal cases must be assigned randomly to avoid a due process violation. *See* Forbes Br., at 28, quoting *State v. Simpson*, 551 So.2d at 1304.[8] However, to repeat, the government here does not have "power" under this district's local rules and procedures to select a judge, as did the government in *Simpson.* Rather, the government simply may inform the Clerk's office of a related pending criminal matter. The Clerk's office ultimately decides whether to assign the case, and the government is not allowed cart blanche to select the specific judge who will preside. *Simpson* is inapplicable.

██ The Court finds that Forbes' Due Process rights are not implicated by the assignment scheme here. First, the Court has found that there was no violation of the local rules which govern assignment of cases. Accordingly, there can be no due process violation as a result of any such alleged violation. Moreover, the Court finds the circumstances here distinct from those of *Pearson* and *Simpson.*

██ This court does not interpret *Simpson's* holding to mean that due process is violated by a local practice which allows a prosecutor to inform the Clerk's office of a related pending criminal matter to allow the Clerk's office to determine whether that matter should be assigned as a related case. As Forbes correctly notes, a violation of the assignment rules is a deprivation of due process when it has resulted in prejudice to the defendant. However, there has been no violation of the assignment rules here. The assignment procedure that allows related cases to be assigned to the same judge does not in and of itself implicate any specific prejudice to the defendant. At oral argument, defendant's counsel was unable to reference any specific prejudice that would be suffered by virtue of the assignment, save for the fact that the assignment was apparently not random. Instead, Forbes relies on the argument that there is a "potential" for prejudice, based upon the existence of the alleged *"ex parte"* communications. The court concludes that there is no such potential given that the first three alleged communications were not *"ex parte"* with regard to the defendant, and that the latter two (the government's February 28 letter and the March 1 affidavit in support of the motion to stay) had no effect whatever on Forbes, except that the March 1 affidavit, to the extent this Court considered it, resulted in a favorable ruling to him because the Court granted his cross-motion to stay. Such is not prejudice to warrant a conclusion that defendant's due process rights have somehow been violated.

██ As for the alleged "appearance of impropriety," the Court finds that this al-

8. It should be noted that *Simpson* did *not* require random assignment but stated that some method must be used which does not

"vest the district attorney with power to choose the judge to whom a particular case is assigned." 551 So.2d at 1304.

legation is based upon the assumption that there were improper *ex parte* communications and that the government caused the assignment of the matter to this Court. As already discussed, there were no improper *ex parte* communications. Nor did the government improperly influence the assignment of this matter. Second, the cases advanced by Forbes which found the existence of an appearance of impropriety were those wherein the prosecutor directly selected the judge. *See Pearson*, 203 F.3d at 1253; *Tyson*, 50 F.3d at 439. Here, there was no such direct selection but rather a related case assignment by the Clerk of the Court. That the government brought the existence of the related matter to the attention of the Clerk does not give the assignment the appearance of impropriety.

## CONCLUSION

Because Forbes has failed to make any showing of a need for discovery as to the contents of the sealed affidavits filed in the civil matter or for further inquiry into the court's assignment procedures, his request for discovery of such matters is denied. Moreover, because Forbes has failed to establish that the Local Rule providing for assignment of criminal matters and his due process rights were violated, or that the assignment of this matter constituted an appearance of impropriety, Forbes' request for random reassignment of this matter is denied.

**SO ORDERED.**

## ORDER

Defendant Walter A. Forbes moves to have this matter placed into the assignment wheel for reassignment randomly throughout the district and for discovery of the contents of three sealed government affidavits filed in the civil *In re Cendant* litigation and of the court's assignment procedures for related criminal cases. Having heard oral arguments April 6, 2001, upon consideration of the parties' submissions, and for the reasons stated in the accompanying opinion,

It is on this ___ day of May, 2001:

ORDERED that Forbes' motion is DENIED.