[No. 29425-7-II.   Division Two.   March 9, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES WATSON, *Appellant*.

*Linda J. King*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Alicia M. Burton* and *Gregory L. Greer, Deputies*, for respondent.

QUINN-BRINTNALL, A.C.J. — Charles Watson appeals his standard range sentence for delivery of a controlled sub-

stance on the grounds that the trial court failed to grant an evidentiary hearing on disputed facts, failed to follow statutory sentencing procedures, and violated his equal protection and due process rights when it denied his request that he be sentenced under the Drug Offender Sentencing Alternative (DOSA).

We hold that the prosecutor's memoranda improperly conveyed the prosecutor's DOSA sentencing policy to all Pierce County superior court judges. But because the State's sentencing brief filed in this case contained a copy of the memoranda and Watson and his counsel received notice of the memoranda prior to his sentencing hearing, the memoranda did not materially affect Watson's sentencing and the error in filing these documents ex parte was harmless.

## FACTS

A Pierce County jury convicted Watson of unlawful delivery of a controlled substance (cocaine) with a school bus route enhancement. His standard sentencing range for this charge was 132 to 168 months.

The State filed a sentencing brief and provided copies to the court and to Watson's defense counsel. Attached to the State's sentencing brief was a November 26, 2001 memorandum from Gerald A. Horne, Pierce County Prosecutor (Horne memorandum). The memorandum was addressed to "Pierce County Superior Court Judges, Department of Assigned Counsel and Department of Corrections" and stated that, "Effective immediately [the prosecutor] will no longer offer DOSA to felony drug offenders." Clerk's Papers (CP) at 72-73. The memorandum continues:

> As an office we recognize the need to support alternatives to total confinement. We also strongly support the idea that defendants receive appropriate chemical dependency treatment while in confinement.
>
> However our office has become increasingly concerned that (1) *offenders who have received a DOSA sentence with the*

*ensuing early release from prison do not appear to receive required chemical dependency treatment while on community custody status*; and (2) drug offenders who are on community custody status via DOSA often have re-offended *without having their DOSA sentence revoked,* sometimes even after we have convicted drug offenders of new felonies!

Because of our tremendous drug problem, *we in Pierce County are particularly impacted and heavily impacted* when defendants receive *shortened prison sentences* through DOSA *only to return and re-offend without* consequences of *revocation and without receiving the drug treatment* intended by our judges and DOSA.

CP at 72 (emphasis in original).

The Horne memorandum referred to an attached memorandum, dated November 7, 2001, prepared by deputy prosecutor Rose Wilhelm (Wilhelm memorandum). The Wilhelm memorandum outlined problems with Pierce County and the DOSA programs, listing case studies of individuals who had been released after completing confinement under DOSA and then committed other crimes or failed to receive treatment.

At the sentencing hearing, Watson's counsel argued that Watson should receive a sentence under the DOSA. The State argued that DOSA should be denied. The court denied Watson's request for DOSA and sentenced Watson to 132 months, the low end of the standard range. Watson appeals his sentence only.

## ANALYSIS

### (1) DISPUTED FACTS

Watson contends that his sentence violated the sentencing procedures mandated by the Washington Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. He argues that the court erred by considering, over his timely objection, "disputed facts" in the two memoranda attached to the State's sentencing brief concerning the Department of Corrections' (DOC) administration of DOSA sentences, without conducting an evidentiary hearing.

■ Generally, a standard range sentence is not reviewable. Former RCW 9.94A.210(1) (2000), *recodified as* RCW 9.94A.585(1). But a defendant may challenge the procedure by which a standard range sentence is imposed, provided that a defendant can show that the sentencing court refused to consider information mandated by RCW 9.94A.500[1] or that the defendant timely and specifically objected to consideration of certain information and no evidentiary hearing was held. *State v. Mail*, 121 Wn.2d 707, 713, 854 P.2d 1042 (1993); *State v. Garcia-Martinez*, 88 Wn. App. 322, 329, 944 P.2d 1104 (1997), *review denied*, 136 Wn.2d 1002 (1998). *Compare Mail*, 121 Wn.2d at 712 ("in order for a 'procedural' appeal to be allowed under *Ammons*, it must be shown that the sentencing court had a duty to follow some specific procedure required by the SRA, and that the court failed to do so") *with State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796 ("[a]n appellant . . . is not precluded from challenging on appeal the procedure by which a sentence within the standard range was imposed"), *cert. denied*, 479 U.S. 930 (1986).

Regarding evidentiary hearings, the relevant provision of the SRA states:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point.

RCW 9.94A.530(2). *See also State v. Herzog*, 112 Wn.2d 419, 432, 771 P.2d 739 (1989).

■ But a defendant must make a timely objection to challenge on appeal the trial court's failure to grant an evidentiary hearing regarding disputed facts. *Mail*, 121

---

[1] Formerly codified at RCW 9.94A.110 (2000), RCW 9.94A.500 requires, among other things, that the trial court conduct a sentencing hearing and a chemical dependency screening. Watson does not argue that the trial court failed to follow this statute.

Wn.2d at 713. *See also State v. Garza*, 123 Wn.2d 885, 891, 872 P.2d 1087 (1994); *State v. Handley*, 115 Wn.2d 275, 282, 796 P.2d 1266 (1990). Watson argues that he did make a timely objection for two different reasons. First, he argues, the "time requirements of CrR 7.1(c) do not apply here, as no [presentence investigation report] was ordered."[2] Br. of Appellant at 13. Second, he argues, because the State's sentencing brief was not filed until one day before the sentencing hearing, it is "unlikely" that defense counsel had time to respond.

But review of the record does not support Watson's claims. Watson did not timely object to, or make any objection at all to, the State's sentencing memoranda, nor did he request a continuance. The record shows that at the sentencing hearing, the State indicated that it had provided to the defense copies of the State's sentencing brief, including the memoranda containing the material that Watson characterizes as disputed facts; the defense indicated that it was ready to proceed with sentencing. The defense could have objected or requested an evidentiary hearing at that time, but it did not.

■ Moreover, Watson never disputed the facts in the sentencing brief or the attached memoranda. Defense counsel acknowledged the State's concerns: "I've gone to some programs for DOSA, and I truly believe [DOC] is trying to strengthen it, trying to address the concerns of the prosecution and the workers within DOC and the community." 4 Report of Proceedings (RP) at 172. In addition, Watson does not discuss any particular information in the Horne memorandum that he actually disputes, or why he disputes it. Unless a defendant makes a "timely and specific" objection to information presented at a sentencing hearing, the

---

[2] CrR 7.1(c) provides, "At least 3 days before the sentencing hearing, defense counsel and the prosecuting attorney shall notify opposing counsel and the court of any part of the presentence report that will be controverted by the production of evidence."

information is not in dispute. *Garza*, 123 Wn.2d at 890.[3] And where, as here, the defendant does not dispute such information, a sentencing court is not required to hold an evidentiary hearing.

(2) FAILURE TO FOLLOW STATUTORY SENTENCING PROCEDURE

Watson also contends that the court did not apply the proper SRA "statutory test" in denying Watson's request for DOSA sentencing.

█ Under the SRA, the sentencing court has discretion to impose DOSA if the offender meets certain eligibility requirements and if the court determines that the offender and the community will benefit from use of the sentencing alternative. RCW 9.94A.660(2).[4] A court's decision to impose a standard range sentence, and not to apply DOSA, is not reviewable. *State v. Conners*, 90 Wn. App. 48, 53, 950 P.2d 519, *review denied*, 136 Wn.2d 1004 (1998). But a challenge to a standard range sentence is permitted if the court erred as to *eligibility* for a sentencing alternative, where the "central issue" is a matter of statutory construction and not a claim that the trial court abused its discretion. *State v. Onefrey*, 119 Wn.2d 572, 574 n.1, 835 P.2d 213 (1992).

Here, Watson suggests that the trial court abused its discretion under *State v. Stenson*, 132 Wn.2d 668, 701, 940

---

[3] *See* RCW 9.94A.530(2) ("In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. *Acknowledgement includes not objecting to information stated in the presentence reports*.") (emphasis added). If a defendant neither objects to information presented at sentencing nor requests an evidentiary hearing, that information is deemed acknowledged. *Handley*, 115 Wn.2d at 282-83. "[A]cknowledgment allows the judge to rely on unchallenged *facts and information* introduced for the purposes of sentencing." *State v. Ford*, 137 Wn.2d 472, 482-83, 973 P.2d 452 (1999).

[4] That statute provides in relevant part:

If the standard sentence range is greater than one year and the sentencing court determines that the offender is eligible for this alternative and that the offender and the community will benefit from the use of the alternative, the judge may waive imposition of a sentence within the standard sentence range and impose a sentence that must include a period of total confinement in a state facility for one-half of the midpoint of the standard sentence range.

RCW 9.94A.660(2).

P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). But his brief contains only statements of disagreement with the result, and it does not identify any specific statutory procedure that the sentencing court failed to follow. Therefore, the trial court's sentencing decision is not reviewable on these grounds.

■ Moreover, we note that Watson's counsel argued at the sentencing hearing that Watson was a good candidate for DOSA, emphasizing Watson's drug dependency and the small amount of cocaine involved. The State argued that Watson was an inappropriate DOSA candidate, considering his criminal history, the length of the sentence, and the limitations on the treatment Watson would receive. Thus, the parties did not dispute that Watson was eligible for DOSA, but rather they disputed whether the court should grant or deny Watson's DOSA request. The DOSA decision lies within the proper exercise of the court's discretion.

Relying on *State v. Pettitt*, 93 Wn.2d 288, 609 P.2d 1364 (1980), Watson also claims that the "mandatory policy" of the prosecutor's office to not offer DOSA to drug offenders and the Horne memorandum "violates the fundamental policy of the SRA that [Watson's] sentence . . . be tailored to his particular circumstances." Br. of Appellant at 20. *Pettitt* held that the policy of the prosecuting attorney of *filing* habitual criminal charges against *all* defendants with three or more prior felonies without consideration for the type or age of the prior felonies constituted an absence and, therefore, an abuse of the prosecutor's discretionary power. 93 Wn.2d at 295-97. But *Pettitt* does not control our decision in the present case.

■ Here, the Pierce County prosecutor's policy did not affect Watson's charges. Instead, the memoranda set out a policy concerning the recommendation of a sentencing alternative. Moreover, the policy was not arbitrary, but established after a review of the efficacy of DOSA in Pierce County. And unlike the mandatory life sentence attendant to the habitual criminal conviction in *Pettitt*, the prosecutor's policy regarding a recommended sentence does not

*mandate* the defendant's sentence. Instead, the decision of the appropriate sentence remains within the discretion of the trial court that must decide whether Watson *and the community* will benefit from use of DOSA. The prosecutor's policy regarding DOSA sentencing recommendations is an exercise of prosecutorial discretion that did not violate Watson's rights.

(3) CONSTITUTIONAL CHALLENGES

Watson next contends that the trial court's refusal to grant a DOSA sentence violated his equal protection and substantive due process rights.

■■ A standard range sentence may be challenged on constitutional grounds, such as reliance on an impermissible ground to sentence within the standard range instead of imposing an alternative sentence. *State v. McNeair*, 88 Wn. App. 331, 336-37, 944 P.2d 1099 (1997). *See Mail*, 121 Wn.2d at 712; *Herzog*, 112 Wn.2d at 423.

A. EQUAL PROTECTION

No published Washington case has held that a court's refusal to grant DOSA to an eligible candidate violates equal protection. But equal protection challenges may arise in some sentencing contexts. *See, e.g., Handley*, 115 Wn.2d at 289 (defendant raised equal protection challenge to his exceptional sentence where a codefendant had received a standard range sentence).

In *McNeair*, Division One of this court held that the exclusion of an offender from DOSA based on that offender's prior felony conviction (under an earlier version of the statute) was a rational classification by our legislature. 88 Wn. App. at 340. Another Division One case, *State v. Garcia-Martinez*, reasoned that a court might violate equal protection by refusing to impose an exceptional sentence downward if it does so based on impermissible factors (such as refusing to apply it to "all drug dealers" or based on race, sex, or religion); on the other hand, a court that "consider[s] the facts and . . . conclude[s] that there is no basis for an exceptional sentence" has exercised its discretion, and its decision is not reviewable. 88 Wn. App. at 330.

■ Likewise, Watson has not shown that the Pierce County prosecutor's policy, or the State's recommendation in this particular case, discriminated based on indigency or any other protected classification. The Horne memorandum states that the office will "no longer offer DOSA to felony drug offenders" (CP at 72); it does not distinguish between poor felony drug offenders and those who could pay for their own treatment.[5] And here, the State argued that various factors made DOSA inappropriate in Watson's case.

Watson also argues that differing sentencing recommendations by the Pierce County prosecutor's office and the sentencing recommendations of other counties' prosecutor's offices violates equal protection.

■ The threshold question is whether Watson has any right at all to DOSA. Although an eligible defendant like Watson has a right to have the sentencing court fairly consider imposing a DOSA sentence, such probationary sentences are privileges, not rights. *See, e.g., State v. Davis*, 43 Wn. App. 832, 835, 720 P.2d 454 (holding that probation is a matter of grace, privilege, or clemency granted to the deserving and withheld from the undeserving within the discretion of the trial judge), *review denied*, 106 Wn.2d 1017 (1986).[6]

■ Moreover, the prosecutor's sentence recommendation is not "purely arbitrary" as Watson contends. Both the State's argument in this case and the discussion in the Horne memorandum point to legitimate concerns specifically applicable to Pierce County regarding the impact on

---

[5] Watson states that his "indigency affects his exclusion from consideration for a DOSA sentence in Pierce County, because if he had private funds he could pay for his own treatment, thereby alleviating the State's concerns about lack of funds." Br. of Appellant at 29. Although the Horne memorandum does mention that those who have been released from prison are not receiving treatment, there is no explicit mention of the economic status of these individuals. And lack of treatment is not the only concern discussed; the memorandum also points to the failure of the DOC to revoke DOSA for those who reoffend while in community custody.

[6] Division One conducted an equal protection analysis where one codefendant received DOSA and one codefendant was excluded by terms of the DOSA statute. *See McNeair*, 88 Wn. App. 331.

the community when defendants receive DOSA sentences and reoffend. We note that the citizens of each county, including Pierce, elect an attorney who lives in their county to set policies appropriate to their circumstances.[7] Varying circumstances create different priorities in each county and may necessitate that these prosecutors address these circumstances in different ways. The fact that not all Washington prosecutors (or the citizens who elect them) would agree on the appropriate sentence recommendation in a given case does not suggest that a considered recommendation violates equal protection.

## B. DUE PROCESS

### 1. SUBSTANTIVE DUE PROCESS

Watson contends that his standard range sentence denied him substantive due process.

██ ██ Any action taken by the sentencing court that fails to meet constitutional due process requirements is impermissible. *State v. Herzog*, 112 Wn.2d 419, 426, 771 P.2d 739 (1989). Substantive due process is guaranteed by the fifth and fourteenth amendments to the United States Constitution and article I, section 3 of the Washington Constitution. To show a denial of substantive due process, Watson must show the State's action was arbitrary and unreasonable. *See Arnold v. Dep't of Ret. Sys.*, 74 Wn. App. 654, 667, 875 P.2d 665 (1994) (citing *Grader v. City of Lynnwood*, 53 Wn. App. 431, 439, 767 P.2d 952, *review denied*, 113 Wn.2d 1001 (1989)), *rev'd on other grounds*, 128 Wn.2d 765, 912 P.2d 463 (1996). Because Watson does not claim a violation of a fundamental right, we review his claim under a rational basis standard. *See In re Pers. Restraint of Metcalf*, 92 Wn. App. 165, 176-77, 963 P.2d 911 (1998) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997)), *cert. denied*, 527 U.S. 1041 (1999).

██ Here, the record provides a rational basis for both the Pierce County prosecutors' sentencing recommendation

---

[7] *See* RCW 36.27.010; RCW 36.16.030.

and the sentencing court's decision in this case. For example, the memoranda expressed concerns that, while on community custody status, individuals who had received DOSA sentences were reoffending, and the Wilhelm memorandum set forth six specific examples. At sentencing, the State indicated that it was not recommending DOSA due to, among other things, Watson's own criminal history: "The reality is the defendant does not draw the line at committing drug problems, and to give him an opportunity—it's just our position that he's not a good candidate for DOSA." 4 RP at 173. Before imposing a DOSA, the sentencing court was required to determine that both the defendant and the community would be benefited. We hold that no violation of substantive due process appears on this record.

2. PROCEDURAL DUE PROCESS AND APPEARANCE OF FAIRNESS

We now review the Horne memorandum under procedural due process. This challenge affects a criminal defendant's right to allocution, which is a statutory right and may implicate procedural due process. RCW 9.94A.500; *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 200, 814 P.2d 635 (1991). *See In re Pers. Restraint of Boone*, 103 Wn.2d 224, 234-35, 691 P.2d 964 (1984) (holding petitioner denied due process in his probation revocation proceeding when his probation officer had submitted a secret report to the trial court).[8] Denial of a criminal defendant's right to allocution may require strict scrutiny and the highest level of procedural due process rights. *See Boone*, 103 Wn.2d at 234. Ex parte communication in a sentencing proceeding may also violate a defendant's right to a sentencing proceeding free of the appearance of unfairness. *See State v. Romano*, 34 Wn. App. 567, 662 P.2d 406 (1983) (sentencing judge's ex parte communication regarding defendant's income, for purposes of setting restitution, was not revealed to defendant until after sentencing, creating an appearance of unfairness).

---

[8] *But see State v. Echeverria*, 141 Wn.2d 323, 336-38, 6 P.3d 573 (2000) (implying that denial of defendant's right to allocution is not constitutional, but considering the issue and finding that defendant *was* granted allocution).

Here, the elected prosecuting attorney sent a memorandum addressed to all superior court judges in Pierce County announcing his decision to refrain from recommending DOSA sentences accompanied by a memorandum from a deputy prosecutor providing factual support for his policy decision. We acknowledge that an elected prosecutor has the right and the obligation to set policy for his office. We also acknowledge that an elected prosecutor has the duty to communicate this policy to constituents and others affected by it. But the Horne memorandum conveyed the State's position regarding DOSA recommendation to the court ex parte. The recommendation and the supporting information were communicated to all Pierce County sentencing courts en banc without notice to the individual defendants who would be sentenced by those courts or their counsel. Such information, if secret, requires vacation of the trial court's decision and a remand for rehearing. *See Romano*, 34 Wn. App. at 569-70.

But *Boone* and *Romano* do not control the decision here. Unlike the defendants in those cases, Watson and his counsel were aware of the Horne and Wilhelm memoranda and had been provided copies and an opportunity to respond during Watson's sentencing hearing. Therefore, although the original Horne memorandum and the Wilhelm supporting information were improperly presented to the trial court initially, Watson had an opportunity to address them before he was sentenced, and he has not demonstrated any prejudice from the ex parte nature of the communication. Moreover, under *Boone* and *Romano*, the proper remedy for Watson's claim is disclosure of the previously secret information and remand for resentencing. 103 Wn.2d at 235; 34 Wn. App. at 569-70. But here, because Watson received the information before the sentencing hearing and had a full opportunity to respond, further correction is not required.

The prosecutor's sentencing recommendation was fully disclosed to Watson before his sentencing hearing and the

error was, therefore, harmless. There being no other errors, we affirm.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review granted at 152 Wn.2d 1036 (2004).