122 P.3d 903 (2005)
155 Wash.2d 574
STATE of Washington, Petitioner,
v.
Charles WATSON, Respondent.
No. 75351-2.
Supreme Court of Washington.
Argued February 15, 2005.
Decided October 13, 2005.
Kathleen Proctor, Pierce County Prosecuting Atty Office, Tacoma, for Petitioner/Appellant.
Linda J. King, Attorney at Law, Tacoma, for Appellee/Respondent.
En Banc.
FAIRHURST, J.
¶ 1 On November 26, 2001, the Pierce County Prosecuting Attorney, Gerald Horne, distributed a memorandum (Horne memorandum) to all Pierce County Superior Court judges, the Department of Assigned Counsel, and the Department of Corrections announcing that, as a general policy, the prosecuting attorney's office would no longer recommend drug offender sentencing alternative (DOSA) sentences according to RCW 9.94A.660. During the subsequent appeal of Charles Watson's sentence, the Court of Appeals held sua sponte that the Horne memorandum was an ex parte communication, although harmless as to that particular offender. State v. Watson, 120 Wash.App. 521, 525, 86 P.3d 158 (2004). *904 The Court of Appeals "holding" was substantively incorrect.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 On August 16, 2002, a jury convicted Watson of unlawful delivery of a controlled substance within 1,000 feet of a school bus route stop.[1] Prior to sentencing, the State filed a sentencing brief and provided defense counsel with copies. The prosecuting attorney attached to the brief a copy of the Horne memorandum, which announced the State's policy not to recommend DOSA sentences due to fundamental problems with the program.
¶ 3 At the sentencing hearing on September 13, 2002, Watson sought a DOSA sentence, and the State recommended against DOSA and in favor of a sentence at the low end of the standard range. The court imposed a low-end standard range sentence. Watson appealed his sentence.
¶ 4 On appeal, the Court of Appeals affirmed the sentence in a published opinion. See State v. Watson, 120 Wash.App. at 536, 86 P.3d 158. In doing so, however, the court "held" sua sponte that the Horne memorandum, circulated before Watson even committed his crime, was an improper ex parte communication. Id. at 525, 535, 86 P.3d 158. The court then went on to reason that because the prosecuting attorney made defense counsel aware of the communication and gave him an opportunity to respond before sentencing, the improper ex parte communication was harmless to Watson. Id. at 535, 86 P.3d 158.
¶ 5 Although satisfied with the result reached by the Court of Appeals, the State sought discretionary review of the court's determination of an improper ex parte communication. We granted the State's petition for review. State v. Watson, 152 Wash.2d 1036, 103 P.3d 801 (2004).

II. ISSUE
¶ 6 Was the Horne memorandum an improper ex parte communication with the trial court in this case?

III. ANALYSIS
¶ 7 We may grant review and consider a Court of Appeals opinion if it "involves an issue of substantial public interest that should be determined by the Supreme Court." RAP 13.4(b)(4). This case presents a prime example of an issue of substantial public interest. The Court of Appeals holding, while affecting parties to this proceeding, also has the potential to affect every sentencing proceeding in Pierce County after November 26, 2001, where a DOSA sentence was or is at issue. Although the Court of Appeals reasoning would require remand only if the policy letter were kept "secret," it invites unnecessary litigation on that point and creates confusion generally.[2]See id. Further, the court's treatment of communications as ex parte in later proceedings has the potential to chill policy actions taken by both attorneys and judges  they may fear that their statements or actions in various public roles would later be treated as ex parte communications.
¶ 8 RAP 3.1 need not bar our review. RAP 3.1 states: "Only an aggrieved party may seek review by the appellate court." Although the State may not technically be an aggrieved party because it received a favorable disposition by the Court of Appeals, contrary to the dissent's assessment, we can and should still review the Court of Appeals opinion. The RAPs are intended to "be liberally interpreted to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a). Moreover, we may choose to disregard RAPs if the interests of justice require. RAP 1.2(c). Review is appropriate in this rare situation where an incorrect holding will have sweeping implications but does not actually render a party "aggrieved" within RAP 3.1.
¶ 9 Similarly, even traditional standing to bring a lawsuit is not an absolute bar to a court's review where an important issue is at stake. Grant County Fire Prot. Dist. *905 No. 5 v. City of Moses Lake, 150 Wash.2d 791, 803, 83 P.3d 419 (2004) (holding that when an issue "is of substantial public importance, immediately affects significant segments of the population, and has a direct bearing on commerce, finance, labor, industry, or agriculture," we will "take a `less rigid and more liberal' approach to standing." (quoting Wash. Natural Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 77 Wash.2d 94, 96, 459 P.2d 633 (1969))). Likewise, courts may hear cases that have been rendered completely moot if an issue is of substantial public interest. Cathcart-Malt-by-Clearview Cmty. Council v. Snohomish County, 96 Wash.2d 201, 208, 634 P.2d 853 (1981) ("A moot case will be reviewed if its issue is a matter of continuing and substantial interest, it presents a question of a public nature which is likely to recur, and it is desirable to provide an authoritative determination for the future guidance of public officials."); see also State v. Ross, 152 Wash.2d 220, 228, 95 P.3d 1225 (2004).
¶ 10 Given the sweeping implications of the Court of Appeals decision, we review the definition of "ex parte communication" and application thereof, both questions of law, de novo. See City of Tacoma v. William Rogers Co., 148 Wash.2d 169, 181, 60 P.3d 79 (2002); State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996).
¶ 11 Neither RPC 3.5 nor CJC 3(A)(4),[3] governing ethical restrictions for attorneys and judges regarding ex parte communications, defines the term "ex parte communication." Washington case law also does not clearly define the term.
¶ 12 "[I]n the absence of a provided definition, this court will give a term its plain and ordinary meaning ascertained from a standard dictionary." State v. Taylor, 150 Wash.2d 599, 602, 80 P.3d 605 (2003). Black's Law Dictionary defines "ex parte communication" as "[a] communication between counsel and the court when opposing counsel is not present." BLACK'S LAW DICTIONARY 296 (8th ed.2004). That definition assumes that there is a proceeding involving the court, with counsel and opposing counsel, and that the communication regards the proceeding at hand. Black's further defines "ex parte" as something being made by one party: "Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested; of or relating to court action taken by one party without notice to the other." Id. at 616, 80 P.3d 605; see also State v. Moen, 129 Wash.2d 535, 541 n. 3, 919 P.2d 69 (1996) ("By definition, an ex parte order is done on the application of one party...."). Black's multiple definitions of "party" also assume that a cause of action exists in which the party is a participant. See BLACK'S, supra, at 1154.
¶ 13 Moreover, courts generally apply the term ex parte communication to communications made by or to a judge,[4] during a proceeding, regarding that proceeding,[5] without notice to a party. See, e.g., State v. Bourgeois, 133 Wash.2d 389, 407-08, 945 P.2d 1120 (1997) (finding an improper ex parte communication between the bailiff (the alter-ego of the judge) and the jury where a juror told the bailiff of juror intimidation which the bailiff relayed to the judge, but which the judge did not pass on to counsel); *906 Sherman v. State, 128 Wash.2d 164, 181, 205, 905 P.2d 355 (1995) (finding an ex parte communication where a judge's judicial extern contacted the Washington monitored treatment program to find out about the monitoring of physicians in the program, specifically the plaintiff in a case before the judge involving an employment dispute over the plaintiff's drug use); Buckley v. Snapper Power Equip. Co., 61 Wash.App. 932, 937-38, 813 P.2d 125 (1991) (holding that a direct communication between a trial judge and a guardian ad litem regarding settlement, which was passed on to defense counsel without the knowledge or participation of the plaintiff's counsel, was an improper ex parte communication); State v. Romano, 34 Wash.App. 567, 568-69, 662 P.2d 406 (1983) (concluding there was an ex parte communication where a judge, during a current proceeding, contacted third parties to verify the defendant's income without the defendant's knowledge); United States v. Forbes, 150 F.Supp.2d 672, 677 (D.N.J.2001) (reasoning the "term [ex parte] contemplates that one actually be a party to a matter before the communication of another party is considered `ex parte.'").
¶ 14 The Court of Appeals cited no opinion concluding there was an ex parte communication where there was not an existing proceeding nor any case finding a general communication not directed at any specific proceeding to be ex parte to some specific proceeding. Instead, the two cases the court cited discussed communications made during proceedings, by parties to the proceedings, regarding those proceedings. See Watson, 120 Wash.App. at 534-35, 86 P.3d 158 (citing In re Pers. Restraint of Boone, 103 Wash.2d 224, 234-35, 691 P.2d 964 (1984) (holding petitioner was denied due process in his probation revocation proceeding when his probation officer submitted a secret report to the trial court); Romano, 34 Wash.App. at 568-69, 662 P.2d 406 (reversing and remanding where the trial judge's ex parte communication regarding the defendant's income created the appearance of impropriety)). Neither those cases nor our other ex parte communication case law supports finding that the prosecuting attorney's general DOSA policy was an ex parte communication in Watson's proceeding.

IV. CONCLUSION
¶ 15 We hold that the Court of Appeals holding that the Horne memorandum was an ex parte communication is incorrect.
C. JOHNSON, BRIDGE, CHAMBERS, OWENS and J.M. JOHNSON, JJ., concur.
ALEXANDER, C.J. (concurring in dissent).
¶ 16 I entirely agree with Justice Sanders who writes in dissent that "the State is not an aggrieved party under RAP 3.1, we should dismiss." Dissent at 906. That, in my view, is as far as we should go. I would, therefore, not go into a discussion, as Justice Sanders does, as to what we would do "[w]ere we to consider this matter on the merits." Dissent at 907.
MADSEN, J., concurs.
SANDERS, J. (dissenting).
¶ 17 The State petitions to review language of a published Court of Appeals opinion affirming the sentence of Charles Watson. But it does not challenge the result. Specifically it questions the court's conclusion that a memo authored by the Pierce County prosecuting attorney and circulated to the Pierce County superior court judges violated the ex parte rule because the memo was distributed five months before Watson committed the crime and seven months before he was charged. It did, however, probably impact other cases actually pending before individual judges at the time. But because the State is not an aggrieved party under RAP 3.1, we should dismiss.
¶ 18 RAP 3.1 states that "[o]nly an aggrieved party may seek review by the appellate court." "An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected." Aguirre v. AT & T Wireless Servs., 109 Wash.App. 80, 85, 33 P.3d 1110 (2001).
¶ 19 Here, the State is not aggrieved, having won on all issues in the Court of Appeals. But it complains of nondispositive language in the opinion below, seeking our correction of perceived error. This we cannot *907 do unless an aggrieved party brings the matter to us on review. We once stated the rule in this way: "`no one can appeal to an appellate court unless he has a substantial interest in the subject matter of that which is before the court and is aggrieved or prejudiced by the judgment or order of the court.'" Sheets v. Benevolent & Protective Order of Keglers, 34 Wash.2d 851, 855, 210 P.2d 690 (1949) (emphasis added) (quoting State ex rel. Simeon v. Superior Court, 20 Wash.2d 88, 90, 145 P.2d 1017 (1944)). But here the State is not prejudiced by the judgment or order of the Court of Appeals and hence is not aggrieved.
¶ 20 We have applied this rule in a similar situation: "Clearly respondent was not `aggrieved' by the final judgment rendered in the case, since it afforded respondent all relief it asked and that could possibly have been granted to it in the cause; and, not being so aggrieved, respondent was not required to appeal to protect its rights." Paich v. N. Pac. Ry. Co., 88 Wash. 163, 165-66, 152 P. 719 (1915). Since the State is not aggrieved, we should dismiss review.
¶ 21 Were we to consider this matter on the merits, I would concur with the majority that there was no violation of RPC 3.5 with respect to Mr. Watson since he was not then a party to an actual proceeding. However circulation of the memo to judges ex parte who were sitting on other relevant cases pending sentencing is much more problematic.
¶ 22 Ex parte communications during the sentencing phase of a criminal proceeding violate the appearance of fairness doctrine and require a new sentencing hearing. State v. Romano, 34 Wash.App. 567, 569, 662 P.2d 406 (1983). They may also raise due process concerns since the evidence in the communication may not be verified. In re Pers. Restraint of Boone, 103 Wash.2d 224, 233, 691 P.2d 964 (1984).
¶ 23 The Court of Appeals reasoned that: "[T]he Horne memorandum conveyed the State's position regarding DOSA recommendation to the court ex parte. The recommendation and the supporting information were communicated to all Pierce County sentencing courts en banc without notice to the individual defendants who would be sentenced by those courts or their counsel." State v. Watson, 120 Wash.App. 521, 535, 86 P.3d 158 (2004). Although this would be inapplicable to Watson, the Court of Appeals is correct with respect to others with a pending or impending case at the time the memo was circulated ex parte.
¶ 24 In Romano the defendant pleaded guilty to theft and argued that his restitution payment should reflect a seasonal income as a jewelry salesman. The judge personally called some of the defendant's coworkers to confirm the seasonal nature of the salesman's income. The Court of Appeals held the contact did not appear fair, even though no actual prejudice was apparent from the record. It reversed and remanded for resentencing.
¶ 25 In Boone the defendant pleaded guilty to assault and was sentenced to jail time and probation. At a probation revocation hearing, the probation officer submitted a report to the judge that the defendant's girl friend had called the officer in a panic because she feared for her safety if the defendant was released. Boone did not discover the report until sometime after his probation was revoked. We remanded the case to the superior court to determine if the secret report influenced the judge's decision. If it did, then the court was to hold another revocation hearing since the first violated due process because it was based on unverified facts. Watson agrees with the Court of Appeals that the communications were ex parte but disagrees that the error was harmless. He points to the language of CJC 3(A)(4) that a judge cannot "consider ex parte or other communications concerning a pending or impending proceeding." He emphasizes the term "impending" and argues that his case was impending when the memo was circulated. Resp't's Suppl. Br. at 8. "[I]mpending" means "that is about to occur," Webster's Third New International Dictionary 1132 (2002), which implies an immediacy and certainty not present when the crime *908 has not occurred. Since Watson's case was not pending or impending when this memo circulated, it was not communicated in violation of the ex parte rule as to him.[1] Therefore there was no error as to himself which could be characterized as harmless.
¶ 26 The State also offers policy reasons to support its case. The prosecutor has the duty to "[s]eek to reform and improve the administration of criminal justice and stimulate efforts to remedy inadequacies or injustice in substantive or procedural law." RCW 36.27.020(13). "Judges may serve as members, officers, or directors of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice." CJC 4(C). The State argues that these functions of prosecutors and judges to improve the legal system will be chilled if their communications will be considered ex parte at some later date. See Corrected Suppl. Br. of Pet'r at 7. But if the communication violates the ex parte rule, this argument is irrelevant.
¶ 27 In summary, I would dismiss this petition for review because the State is not an aggrieved party and has no standing. If the merits were reached, I would concur in the judgment of the majority that the ex parte rule was not violated with respect to Watson because the memorandum was circulated before he became a party to an actual proceeding.
NOTES
[1] The crime took place on or about April 4, 2002.
[2] The Court of Appeals reasoning in this case has already been discussed and distinguished in another ex parte communication case. See State v. Juarez, noted at 122 Wash.App. 1012, 2004 Wash.App. LEXIS 1303, 2004 WL 1447737 (2004).
[3] Watson asserts that CJC 3(A)(4) supports defining ex parte communications to include communications made when there is no judicial proceeding in place. Resp't's Suppl. Br. at 7-8. The rule states: "Judges should accord to every person who is legally interested in a proceeding, or that persons lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding." CJC 3(A)(4). But "impending" does not refer to hypothetical future cases that are not yet imminent  Webster's Third New International Dictionary defines "impending" as what "is about to occur" or is "imminent." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1132 (2002). Indeed, the comment to the rule describes the "proscription against communications concerning a proceeding," not a future or potential proceeding. CJC 3(A)(4) cmt. (emphasis omitted).
[4] Statements made by or to the judge can involve a party or a neutral third party. See CJC 3(A)(4) cmt.
[5] The comment to CJC (3)(A)(4) describes the "proscription against communications concerning a proceeding." (Emphasis omitted).
[1] Watson also challenges the Court of Appeals ruling that he was given adequate opportunity to respond to the memo since he received it only one day before the hearing. Resp't's Suppl. Br. at 12-13. This ruling was central to the court's finding the error harmless.