[No. 37985.    Department Two.    June 2, 1966.]

PEGGY C. MORRIS, *Individually and as Administratrix, et al.,* Appellants, v. LAURA A. NOWOTNY, *Individually and as Executrix, et al., Respondents.**

*Frederick Paul* and *John Spiller,* for appellants.

*Merges, Brain & Hilyer, G. Robert Brain,* and *Edwards E. Merges,* for respondents.

PER CURIAM.—This is an appeal by the plaintiffs from the judgment of the trial court sitting without a jury in which their complaint was dismissed with prejudice. The plaintiffs are Mrs. Peggy Morris, the widow of Robert D. Morris, suing as administratrix of the estate of Robert D. Morris and in her own behalf, and Alvin J. Ziontz, suing as guardian ad litem of the eight children of Robert D. Morris and Peggy Morris. They will hereinafter be referred to as appellants. At the trial, appellants introduced testimony tending to prove that Robert D. Morris survived Martin O. Nowotny, and that, therefore, the devise of property left to Robert D. Morris under the will of Martin O. Nowotny (being one third of the residue) did not lapse pursuant to RCW 11.12.110 but, instead, passed to the Robert Morris estate, and ultimately to his heirs as defined by the intestacy laws.

*Reported in 415 P.2d 4.

The defendants (respondents) are Laura A. Nowotny, individually, and as executrix of her husband's estate, and John M. A. Morris and Edward Eric Morris, who are brothers of the deceased Robert D. Morris.

Under the provisions of Mr. Nowotny's will, his three stepsons were named as legatees and devisees of the residue of his estate, which consisted of one half of the community property owned by him and his wife, Laura A. Nowotny.

There is only one contested factual issue in the entire suit. The vital question is: Which of these two men (Robert D. Morris or his stepfather, Martin O. Nowotny) drowned first in a boating accident?

The accident occurred on Lake Packwood late Saturday afternoon, November 9, 1963, at about dusk. Martin O. Nowotny and two of his stepsons, Robert D. Morris and John M. A. Morris, were returning from an elk hunt across the lake in a small boat powered by an outboard motor. The boat swamped when they had proceeded about 200 yards from shore, and all 3 men were cast into the water as the boat sank out from under them, capsizing as it sank. The boat had some flotation tanks, but they did not support the boat and its occupants when the boat had become filled with water. The bow stayed awash just under the surface as the three men struggled to stay afloat. After being in the water at least 30 or 40 minutes (and perhaps more than an hour), John was rescued by some fellow hunters. Both Martin Nowotny and Robert Morris drowned prior to his rescue. The only eyewitness to the tragedy was John Morris.

The testimony of John is that his brother, Robert Morris, died first. John's mother and a friend of the family, who were at the Nowotny cabin when John was brought there immediately after his rescue, both testified that John told them immediately after his arrival that Robert had died first. The testimony of one of John's rescuers tends to show that John stated immediately after he was rescued that his stepfather, Martin Nowotny, died first. The testimony of four skindivers on the Lewis County sheriff's rescue and diving team, who were at the scene the following morning for the purpose of recovering the bodies, indicates

that, in an effort to help them locate the bodies, John told them that his stepfather drowned first and that his brother drowned some 20 minutes or so later. As stated, the decision in this case depends upon the determination of the contested factual issue as to which man drowned first.

The additional background of this factual dispute may be briefly stated. Laura A. Nowotny, as executrix, and her two surviving sons are the defendants in this action. They will hereinafter be referred to as respondents.

All parties agree that Robert D. Morris is not a *relative* within the meaning of RCW 11.12.110 (Washington's version of the anti-lapse statute), because Robert was neither a blood relative nor a legally adopted son of Martin Nowotny. The statute reads:

> When any estate shall be devised or bequeathed to any child, grandchild, or other relative of the testator, and such devisee or legatee shall die before the testator, having lineal descendants, such descendants shall take the estate, real and personal, as such devisee or legatee would have done in case he had survived the testator. A spouse is not a relative under the provisions of this section.

Since this statute is not available for the protection of the interests of Robert's eight surviving children, who are his "lineal descendants," the parties are also in agreement that the disposition of Robert's share of his stepfather's estate depends on whether he or Mr. Nowotny died first. If Robert is legally determined to have survived the testator, his eight surviving children and his widow will receive one third of the residue in accordance with the statutes relating to intestate succession. However, if Robert predeceased Mr. Nowotny, John and his brother Edward Eric will each receive one half of the residue.

The trial court made its finding of fact No. 2, in which it found that Robert D. Morris predeceased Martin O. Nowotny by approximately 20 minutes. Hence it denied appellants any relief under their complaint and dismissed the action. The effect of this dismissal was to award to each of respondents John and Edward Eric Morris one half of the residue of Mr. Nowotny's estate.

Besides assigning error to the trial court's finding of fact on the vital issue, appellants claim that the court erred in failing to grant them a new trial on the ground (among others) that there was an irregularity in the proceedings. Appellants contend that the trial court, which was the trier of fact in this emotion-charged case, itself became emotionally involved because the nature of the evidence evoked memories of tragic events in the trial judge's own life. Thus, it is argued, appellants did not have a fair trial and their motion for a new trial should have been granted.

██ We have read the record very carefully. In the trial court's oral opinion, and in the trial court's certification of "additional facts" (attached to the statement of facts), there are strong indications that the trial judge was considerably moved by sympathy and empathy for Mr. John Morris in his tragic experience and that this sympathy and empathy caused the trial judge to become emotionally involved in the case. This occurred involuntarily on the part of the trial court. The question we must answer is whether the court's emotional involvement constituted reversible error which requires the granting of a new trial. In other words, did appellants have a fair trial by an impartial tribunal?

Under Rule of Pleading, Practice and Procedure 59.04W, (paragraph No. 1), a new trial may be granted for:

Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial . . . .

The claimed irregularity in this instance was the emotional reaction of the trial court to the evidence presented by the parties concerning these tragic events which required the trial court to choose between conflicting testimony of the witnesses based on the credibility and accuracy of memory of each. It appears from the statement of facts that the trial court, without fault on its part, was unable to evaluate the testimony in the calm and dispassionate manner in which the trier of facts must approach an evaluation of conflicting testimony.

No reported cases in this jurisdiction or in any other have been cited by counsel in which this precise problem has arisen. Appellants' counsel has referred to cases concerning jury verdicts but, because the facts are sufficiently dissimilar, we do not discuss them since they do not directly bear upon our problem. Nevertheless, we believe that appellants' argument based on those cases has merit in that it is a generally accepted principle of law that a party to a lawsuit is entitled to have disputed questions of fact decided by a dispassionate trier of facts.

If a jury had shown the same emotion which the trial court certified that it experienced in this case, we would feel compelled to reverse a judgment based on its verdict and order the granting of a new trial. We are of the opinion that in a case tried to the court the parties are entitled to the same dispassionate weighing of the conflicting testimony as is required in a case tried to a jury.

The legal question presented in this case is whether an irregularity occurred within the meaning of Rule 59.04W-(1), which prevented appellants from having a fair trial. From our examination of the record before us, we are convinced that such an irregularity occurred and, therefore, a new trial must be granted.

We are not holding that the trial court's finding of fact No. 2 was incorrect—that we cannot and do not decide, because there was sufficient evidence to support a finding that either one of the two men drowned before the other.

In view of the conclusion which we have reached, we do not find it necessary to discuss appellants' other assignments of error.

For the reason stated herein, the judgment of the trial court is reversed with directions to grant appellants a new trial.

Costs of this appeal will abide the outcome of the cause, as provided in Rule on Appeal 55 (b) (1).

---

August 3, 1966. Petition for rehearing denied.