[No. 24910-0-I. Division One. June 24, 1991.]

ATHEANA BUCKLEY, *Appellant,* v. SNAPPER POWER EQUIPMENT COMPANY, *Respondent.*

*William Johnston,* for appellant.

*Steven Fitzer,* for respondent.

BAKER, J.—Atheana Buckley, a minor, appeals the trial court's approval of a settlement in her personal injury case against respondent, Snapper Power Equipment Company, alleging the trial court erred in: (1) failing to recuse itself after engaging in ex parte communication; (2) denying her parents' motion to be appointed guardians ad litem for purposes of this appeal; and (3) approving a settlement of the minor's claims against respondent for $30,000. We affirm.

## FACTS

Atheana Buckley was seriously injured in a lawnmower accident when she was 6 years old. The accident occurred when Atheana's older sister Heather, then 11 years old, was mowing the family's lawn using a rear–engine riding mower while Atheana played on the lawn. No adults were present. Heather states that the mower hit a depression and reared up, causing her to lose steering control and run over Atheana's foot. A police accident report made at the scene states that the father and Heather explained that Atheana ran in front of the mower to pick up a stick and Heather was unable to stop the mower in time to avoid the accident.

The mower was manufactured by respondent Snapper Power Equipment Company (Snapper). The owners' manual states that no minors should be allowed to operate the mower, except responsible teenagers with mature judgment, and then only under close supervision. It also states that children should not be allowed in the yard when the mower is operated.

Appellant's main theory of liability against Snapper is that the company marketed the grass catcher attachment to the mower without adequately marketing a front load carrier attachment, which appellant claims is necessary to balance the weight of the grass and keep the mower stable. Appellant claims that in 1985, the year of Atheana's accident, Snapper sold 53,949 grass catchers and only 329 front load carriers. The Buckleys did not own a front load carrier, and at the time of Atheana's accident Heather was using the grass catcher attachment. The owners' manual states that failure to use a weighted front load carrier while using the grass catcher may result in a loss of steering control. Two statements in the manual say this is a concern when operating the mower on slopes, while a third statement does not mention slopes. Appellant's lawn is virtually flat. Snapper contended that it was physically impossible for the mower to behave in the manner alleged by sister Heather.

The guardian ad litem estimated Atheana's damages at $500,000 to $750,000. Atheana settled her claim against her parents and sister under their homeowners' insurance policy for $75,000, and settled with the retailer of the mower for $25,000. The only remaining defendant was respondent Snapper. Snapper initially proposed a $6,000 settlement. Atheana's guardian ad litem, believing her case to be weak, recommended that the trial court approve the settlement, but her attorney argued against it. The trial court rejected the proposed settlement.

The following day, Snapper's attorney telephoned the guardian ad litem and asked if he could ethically ascertain the judge's opinion concerning an acceptable settlement figure. The guardian ad litem then telephoned the judge without the knowledge or participation of plaintiff's counsel, and posed the question to the judge. The judge responded that $30,000 would be an acceptable settlement amount. The guardian ad litem conveyed this information to Snapper's attorney, who consulted his client and promptly offered $30,000. Snapper's attorney saw plaintiff's

counsel that evening, June 1, 1989, and related all of these events to him.

At the hearing on the proposed $30,000 settlement on June 9, 1989, the guardian ad litem again argued for the settlement and plaintiff's attorney again argued against it. Plaintiff's counsel, prompted by the court, complained that defense counsel had negotiated directly with the guardian ad litem rather than with himself. However, plaintiff's counsel did not complain about the ex parte communication between the guardian ad litem and the trial court, although he had learned of that communication on the day it occurred. The trial court adopted the report of the guardian ad litem recommending approval of the settlement. The trial court stated that plaintiff's case was weak because there was no slope in the lawn and because of the apparent inconsistency between Heather's statements in the police report and her later testimony as to how the accident occurred.

Plaintiff raised the ex parte communication issue for the first time on August 25, 1989, at a hearing on a motion for reconsideration. She requested that the settlement be vacated and another judge appointed. The motion was denied. Plaintiff later moved to have her parents appointed guardians ad litem for purposes of appeal, and this motion was also denied.

Plaintiff subsequently obtained an order directing transfer of the $30,000 Snapper settlement proceeds from the court registry to a blocked account at Horizon Bank for the benefit of the minor. The order also directed transfer of another $25,000 from the court registry to Horizon Bank for benefit of the minor. Plaintiff thereafter obtained an order to disburse $6,139.27 from her funds at Horizon Bank for costs and attorney's fees associated with the litigation.

## I
### APPEAL BY NEXT FRIEND OF MINOR

■ The parents correctly argue that they may appeal as next friend of their minor child despite the appointment of

a guardian ad litem. In *In re Ivarsson,* 60 Wn.2d 733, 736–38, 375 P.2d 509 (1962), a minor's grandmother and her husband sought to appeal a decision authorizing the payment of certain fees and expenses out of the minor's estate. Respondent argued that the appointment of a guardian ad litem precluded an appeal by a next friend. The court disagreed, stating that an appellate court "will not dismiss a meritorious appeal by a 'next friend' in [a guardianship] proceeding merely because a guardian ad litem has been appointed." *Ivarsson,* 60 Wn.2d at 738. While in *Ivarsson* the guardian ad litem's fee was one of the items in dispute, the court did not restrict its holding to cases of a conflict of interest between the guardian ad litem and the ward, but rather stated more broadly that "a guardian ad litem may make a mistake in judgment, which brings about a situation which should be reviewed by an appellate court[.]" *Ivarsson,* 60 Wn.2d at 737.

Respondent's reliance on *Battyany v. McNeley,* 83 Wash. 666, 670, 145 P. 978 (1915) is misplaced. In *Battyany,* a father who was guardian of his minor children attempted to appeal a trial court decision on their behalf. The court refused to hear the father's appeal not because a guardian ad litem had been appointed for the sons, but because the father's interests were adverse to the sons' in the litigation in question. In the present case, the parents have no interests adverse to their daughter's in proceeding against Snapper. They therefore may appeal the trial court's decision as her next friend.[1]

## II
### WAIVER OF OBJECTION TO EX PARTE COMMUNICATION

The trial court communicated directly with the guardian ad litem, and indirectly with defense counsel, concerning a settlement amount that would be acceptable to the trial

---

[1] In light of this holding, it is unnecessary to consider appellant's assignment of error to the trial court's failure to appoint her parents as guardians ad litem for purposes of appeal.

court. The communication took place without the knowledge or participation of plaintiff's counsel, and therefore it was a prohibited ex parte communication under Code of Judicial Conduct 3(A)(4),[2] and the trial court should have recused itself pursuant to CJC 3(C)(1).[3]

If appellant has not waived the error, the trial court's failure to recuse itself would be reversible error because it prevented appellant from having a fair hearing. CR 59(a)(1), governing grounds for a new trial or reconsideration, provides that a decision may be vacated for an irregularity in the proceedings which materially affects the substantial rights of a party, preventing that party from having a fair trial. Such irregularities include those caused by the trial court itself. *See Morris v. Nowotny*, 68 Wn.2d 670, 673–74, 415 P.2d 4 (1966) (trial court's emotional involvement in case prevented it from evaluating testimony in an impartial manner, thus denying appellant a fair trial).

Snapper's argument that no prejudice to appellant resulted from the ex parte contact is unconvincing. Any party who, through ex parte communication with the trial court, learns the court's opinion of a reasonable settlement amount, has an obvious and unfair advantage over his or her opponent.

---

[2]CJC 3(A)(4) provides:

"(4) Judges should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. Judges, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before them, by amicus curiae only, if they afford the parties reasonable opportunity to respond."

[3]Appellant filed a motion on June 20, 1990, to supplement the record with documents showing that the Commission on Judicial Conduct charged the trial judge with violating CJC 2(A) and 3(A)(4), and that he stipulated to an order of admonishment therefor. The proposed additional evidence is not needed to resolve the issues on review and would not change our decision, since the record already before this court is sufficient to establish that the trial court did engage in prohibited ex parte communication. *See* RAP 9.11. Appellant's June 20, 1990, motion to supplement the record is therefore denied.

■ However, appellant did not raise the issue of ex parte communication or request disqualification of the trial judge until her motion for reconsideration. Under some circumstances, an issue may be preserved for appeal even though it was not raised until a motion for reconsideration. *See Newcomer v. Masini,* 45 Wn. App. 284, 287, 724 P.2d 1122 (1986); *see also Rotta v. Early Indus. Corp.,* 47 Wn. App. 21, 23–24, 733 P.2d 576, *review denied,* 109 Wn.2d 1012 (1987). However, this is not the case where the moving party seeks to disqualify the trial judge.

> [A] litigant who for the first time during trial learns of grounds for disqualification must promptly make his objection known, as by moving for a mistrial. He may not, after learning of grounds for disqualification, proceed with the trial until the court rules adversely to him and then claim the judge is disqualified.

(Citations omitted.) *Williams & Mauseth Ins. Brokers, Inc. v. Chapple,* 11 Wn. App. 623, 626, 524 P.2d 431 (1974); *accord, State v. Bolton,* 23 Wn. App. 708, 714–15, 598 P.2d 734 (1979), *review denied,* 93 Wn.2d 1014 (1980); *In re Carpenter,* 21 Wn. App. 814, 819–20, 587 P.2d 588 (1978). A litigant who proceeds to a trial or hearing before a judge despite knowing of a reason for potential disqualification of the judge waives the objection and cannot challenge the court's qualifications on appeal. *Brauhn v. Brauhn,* 10 Wn. App. 592, 597–98, 518 P.2d 1089 (1974). These principles were recently recognized by the Supreme Court in *Harbor Enters., Inc. v. Gudjonsson,* 116 Wn.2d 283, 290–91, 803 P.2d 798 (1991), where the court distinguished *Williams & Mauseth* and *Brauhn* from the case before it because those cases involved untimely assertion, and therefore waiver, of the right to disqualify a judge.

Appellant's counsel was informed of the ex parte communication on June 1, 1989, yet he failed to object to it or request disqualification of the judge then, or at the June 9 hearing where the settlement was approved. Instead, he raised the issue nearly 4 months later at a hearing on

plaintiff's motion for reconsideration. The ex parte communication issue was not timely raised and therefore was waived.[4]

### III
### ACCEPTANCE OF BENEFITS

We next consider Snapper's alternative argument that by withdrawing the settlement proceeds from the court registry, appellant has accepted the benefits of the trial court decision and has thereby lost the right to obtain review of that decision. Snapper relies on RAP 2.5(b) which provides, in pertinent part:

**(b) Acceptance of Benefits.**
(1) *Generally.* A party may accept the benefits of a trial court decision without losing the right to obtain review of that decision only (i) if the decision is one which is subject to modification by the court making the decision or (ii) if the party gives security as provided in subsection (b)(2) or (iii) if, regardless of the result of the review, the party will be entitled to at least the benefits of the trial court decision.

None of the three exceptions stated in RAP 2.5(b) apply in the present case. The decision is not one which is subject to modification,[5] nor has appellant given security, nor is appellant entitled to at least the benefits received, since a trial on remand could result in a defense verdict.

---

[4]Appellant argues that her counsel's actual knowledge of the grounds for the judge's disqualification is irrelevant because those grounds were not disclosed on the record in open court until after the judge approved the settlement. Appellant cites no legal authority for this argument and the authorities cited herein impose no such requirement of disclosure on the record.

Appellant makes this argument in her reply brief. Snapper has moved to strike appellant's reply brief because it was filed over 2 months late and contains several serious format violations. *See* RAP 10.2(d); 10.4. However, in light of the lack of prejudice to Snapper from these violations, and because we are dealing with the rights of a minor, we deny Snapper's motion to strike the brief and decline to impose sanctions.

[5]Examples of decisions subject to modification fall primarily within the law of domestic relations, *e.g.,* a spouse may accept maintenance and support while seeking review of the amount awarded. 2A L. Orland, Wash. Prac., *Rules Practice,* Official Comment to RAP 2.5, at 499 (3d ed. 1978).

However, by way of a motion to supplement the record, appellant argues that she has not accepted the benefits of the settlement proceeds. She offers the affidavit of a bank official stating that the $30,000 Snapper settlement proceeds have not been commingled with her other funds, but have been kept in a separate money market account. No funds have been withdrawn therefrom (and cannot be without court order), and all interest thereon has been redeposited in the money market account.

■ Snapper correctly points out that appellant's motion to supplement the record is misnamed. A motion to supplement the record pursuant to RAP 9.10 allows a party to request that additional portions of an already existing trial record be transmitted to the appellate court. The affidavit offered by appellant was not part of the trial court record. Appellant's motion is more properly termed a motion to take additional evidence pursuant to RAP 9.11.[6]

■■ The additional evidence offered by appellant does not meet the first two criteria of RAP 9.11(a), namely, it is not needed to fairly resolve the issues on review and would not change the decision being reviewed. The withdrawal of judgment proceeds from a court registry satisfies the judgment and renders an appeal of the judgment moot. *Murray v. Murray*, 38 Wn.2d 269, 273–74, 229 P.2d 309 (1951); *Potter v. Potter*, 46 Wn.2d 526, 527, 282 P.2d 1052 (1955). Furthermore, return of the money to the clerk of the court does not serve to reinstate a party's right to appeal. *Lyons*

---

[6]RAP 9.11 provides:

"(a) **Remedy Limited.** The appellate court may direct that additional evidence be taken before the decision of a case on review if: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

"(b) **Where Taken.** The appellate court will ordinarily direct the trial court to take additional evidence and find the facts based on that evidence."

*v. Bain*, 1 Wash. Terr. 482 (1875); 4 Am. Jur. 2d *Appeal and Error* § 251, at 746 (1962). That appellant has not spent the money in question does not alter the fact that she has, indeed, accepted it within the meaning of RAP 2.5(b). Whether the party who accepted the benefits actually intended to waive his or her right to appeal is generally immaterial. 4 Am. Jur. 2d *Appeal and Error*, § 250, at 746 (1962). Appellant's February 11, 1991, motion to supplement the record is therefore denied. Plaintiff's acceptance of the benefits of the trial court decision bars review by this court.

We recognize the special relationship a minor plaintiff has with the court on appeal. *See, e.g., In re Ivarsson*, 60 Wn.2d 733, 737, 375 P.2d 509 (1962); *In re Deming*, 192 Wash. 190, 200, 73 P.2d 764 (1937). However, two well established legal grounds preclude further consideration of appellant's arguments: failure to assert a timely objection concerning a judge's qualifications to hear a matter precludes consideration of the issue on appeal, and, acceptance of the benefits of a trial court's decision forecloses appellate review of the decision. We are not persuaded that the best interests of the minor plaintiff require us to ignore these rules and expose her to the expenses of trial and the possibility of a defense verdict.

## IV
### Respondent's Attorney's Fees

Respondent Snapper's request for attorney's fees for a frivolous appeal based on RAP 18.9(a) and RCW 4.28-.185(5) is denied. The substantive issues raised in this appeal were not frivolous.

We affirm.

Pekelis and Forrest, JJ., concur.

Reconsideration denied July 23, 1991.