IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROBERT K. HALL, a single man, and DAYLIGHT PROPERTIES, LLC, a Washington limited liability company, | ) ) ) ) | NO. 68727-1-I |
| | ) | (Consolidated with No. 68927-4-I) |
| Respondents, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| MATTHEW FEIGENBAUM and JANE DOE FEIGENBAUM, husband and wife, and the marital community comprised thereof, | ) ) ) ) ) | PUBLISHED OPINION |
| | ) | |
| Appellants. | ) | FILED: January 13, 2014 |
| | ) | |

LEACH, C.J. — In this commercial unlawful detainer action, Matthew Feigenbaum appeals multiple trial court orders, based primarily upon allegations that Robert Hall failed to comply with the notice requirements of the parties' lease and applicable statutes. Because Hall complied with these notice requirements and Feigenbaum does not otherwise show reversible error, we affirm and award Hall attorney fees incurred on appeal.

FACTS

In 2003, Matthew Feigenbaum entered into a commercial lease with Robert K. Hall to operate a nightclub (premises). The lease provided that Feigenbaum's failure "to keep and perform any of the covenants and agreements

[that] continues for twenty (20) days after written notice from Lessor" would entitle Hall to either terminate and reenter or continue the lease and sublet the space. The lease specified that "[a]ny notice required to be given . . . to the Lessee" would use the address of the premises or "such other address as either party may designate to the other in writing."

At some point, Feigenbaum stopped operating the nightclub.[1] He did not pay rent for September and October 2010. On November 5, 2010, Hall served Feigenbaum with a three-day notice to pay or vacate by posting and mailing to the premises. On December 1, Hall commenced an unlawful detainer action by filing a summons and complaint and secured ex parte a temporary restraining order and an order to show cause why a writ of restitution should not be issued. The order restrained Feigenbaum from removing property from the premises but did not restrict Feigenbaum's access to them and did not require that Hall post a bond. The return date for both orders was December 17.

Between December 1 and 3, Hall made six unsuccessful attempts to personally serve Feigenbaum with the summons and complaint. After a court commissioner entered an ex parte order allowing service by posting and mailing,

---

[1] Feigenbaum states that he stopped operating the nightclub and attempted to sell the business in 2010. Hall states that Feigenbaum ceased doing business in 2008.

-2-

Hall mailed the pleadings to the premises on December 6 and posted them at the premises on December 7. Feigenbaum received the pleadings on December 9.

The court granted Hall's motion for a preliminary injunction, barring Feigenbaum from removing personal property from the premises. The injunction did not require a bond. The court ordered Feigenbaum to pay $14,400 into the court's registry immediately for unpaid rent and to deposit future rent moneys into the court's registry as they came due. Feigenbaum deposited the $14,400 but did not pay January's rent. On January 7, 2011, the trial court found that "no monthly rent payment currently due has been timely paid to the registry of the court" and entered an order for writ of restitution. Finding that Feigenbaum was properly served and received adequate notice, the court denied Feigenbaum's motion to dismiss for lack of jurisdiction. The court ordered that $12,700 of the funds held in the court's registry be released to Hall.

On August 30, 2011, Hall relet the premises to a new tenant. The new tenant's lease provided for rent lower than the monthly rent that Feigenbaum paid.

On January 9, 2012, Feigenbaum filed a motion asking that the trial court clarify whether the court had converted the unlawful detainer action into an

ordinary civil action.  On February 10, 2012, the court entered an order stating that it had done so.

On April 13, 2012, the court granted Hall summary judgment for $136,809.29.  The judgment included rent through December 31, 2011, decreased rent from January 1, 2012, to August 31, 2013, and costs related to mitigation and cleaning.  On July 2, 2012, the court awarded Hall costs and reasonable attorney fees totaling $43,000.00, bringing the final judgment to $179,807.29.  Feigenbaum appeals.

## ANALYSIS

Waiver of Certain Issues on Appeal

Feigenbaum appealed a number of the trial court's orders in this lengthy litigation but did not address them in his opening brief.  We deem an issue not briefed to be waived.[2]  We decline to review these orders.  Moreover, although Feigenbaum assigns error on appeal to the trial court's issuance of the temporary restraining order and preliminary injunction, he did not raise the associated issues below.  An appellate court "may refuse to review any claim of error which was not raised in the trial court."[3]  Consequently, we decline to review them here.

---

[2] Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992); see Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 385 (2011) (declining to consider an inadequately briefed argument).

[3] RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005).

Unlawful Detainer Actions Generally

An unlawful detainer action brought under RCW 59.12.030 is a summary proceeding designed to enable the recovery of possession of leased property.[4] "The action is a narrow one, limited to the question of possession and related issues such as restitution of the premises and rent."[5] Due to the summary nature of the action, a trial court generally does not permit the assertion of counterclaims that are not "'based on facts which excuse a tenant's breach.'"[6] The civil rules are the rules of practice for unlawful detainer actions,[7] but when the civil rules conflict with the unlawful detainer statute, the statute, as a "special proceeding," controls.[8] Washington courts require strict compliance with the time and manner requirements for unlawful detainer actions[9] and strictly construe them in favor of the tenant.[10] The superior court has jurisdiction over unlawful detainer actions.[11] The state constitution vests the superior court with broad authority over real estate disputes, and the unlawful detainer statute explicitly

---

[4] Munden v. Hazelrigg, 105 Wn.2d 39, 45, 711 P.2d 295 (1985).

[5] Munden, 105 Wn.2d at 45.

[6] Munden, 105 Wn.2d at 45 (quoting First Union Mgmt., Inc. v. Slack, 36 Wn. App. 849, 854, 679 P.2d 936 (1984)).

[7] RCW 59.12.180.

[8] CR 81(a); Christensen v. Ellsworth, 162 Wn.2d 365, 374, 173 P.3d 228 (2007).

[9] Christensen, 162 Wn.2d at 372.

[10] See Hous. Auth. v. Terry, 114 Wn.2d 558, 569, 789 P.2d 745 (1990).

[11] RCW 59.12.050. Superior courts have broad general jurisdiction over real estate disputes. See WASH. CONST. art. IV, § 6.

gives jurisdiction over unlawful detainer actions to the superior court.[12] This

jurisdiction "remains constant regardless of procedural missteps by the parties,"[13]

but a party filing an action after improper notice "'may not maintain such action or

avail itself of the superior court's jurisdiction.'"[14]

Sufficiency of Service and Notice

A challenge to the adequacy of notice presents a mixed question of law

and fact,[15] which we review de novo.[16]

RCW 59.12.040 provides that

[a]ny notice provided for in this chapter shall be served either (1) by
delivering a copy personally to the person entitled thereto; or (2) if
he or she be absent from the premises unlawfully held, by leaving
there a copy, with some person of suitable age and discretion, and
sending a copy through the mail addressed to the person entitled
thereto at his or her place of residence; or (3) if the person to be
notified be a tenant, or an unlawful holder of premises, and his or
her place of residence is not known, or if a person of suitable age
and discretion there cannot be found then by affixing a copy of the
notice in a conspicuous place on the premises unlawfully held, and
also delivering a copy to a person there residing, if such a person
can be found, and also sending a copy through the mail addressed

---

[12] WASH. CONST. art. IV, § 6; Hous. Auth. v. Bin, 163 Wn. App. 367, 373-74, 260 P.3d 900 (2011).

[13] Bin, 163 Wn. App. at 373-74 (citing Tacoma Rescue Mission v. Stewart, 155 Wn. App. 250, 254 n.9, 228 P.3d 1289 (2010)).

[14] Bin, 163 Wn. App. at 374 (quoting Tacoma Rescue Mission, 155 Wn. App. at 254 n.9).

[15] Speelman v. Bellingham/Whatcom County Hous. Auths., 167 Wn. App. 624, 630, 273 P.3d 1035 (2012) (citing Miebach v. Colasurdo, 102 Wn.2d 170, 175, 685 P.2d 1074 (1984)).

[16] Speelman, 167 Wn. App. at 630 (citing Humphrey Indus., Ltd. v. Clay St. Assocs., 170 Wn.2d 495, 501-02, 242 P.3d 846 (2010)).

to the tenant, or unlawful occupant, at the place where the premises unlawfully held are situated.

The purpose of the notice is to give a tenant "'at least one opportunity to correct a breach before forfeiture of a lease under the accelerated restitution provisions of RCW 59.12.'"[17] Service by mail adds an additional day to the notice requirement; therefore, when a landlord serves by mail, a tenant is not guilty of unlawful detainer until four days after service.[18]

The lease required that "any notice required to be given" to Feigenbaum be sent to the premises. In case of default, the lease provided for 20 days' notice before the start of any legal action. On November 5, 2010, Hall served Feigenbaum with the 3-day notice to pay or vacate pursuant to RCW 59.12.040(3), affixing and then mailing a copy of the notice to the premises. Hall filed the eviction summons and complaint on December 1, 2010: over 20 days after posting and mailing the notice to pay rent or vacate.

Hall knew the nightclub was no longer operating, but Feigenbaum did not change his address for lease notice purposes, as required by the lease. The repeated use of the word "or" in RCW 59.12.040 implies that (1), (2), and (3) are equal alternatives for notice under chapter 59.12 RCW, with alternative (3) a

---

[17] Christensen, 162 Wn.2d at 371 (quoting Terry, 114 Wn.2d at 569).
[18] RCW 59.12.040; Christensen, 162 Wn.2d at 371.

logical choice when a plaintiff does not know a defendant's home address.[19] Feigenbaum argues that Hall knew his home address and so did not comply with RCW 59.12.040. However, Feigenbaum offers no evidence to support this assertion and does not assert that he provided Hall with a written notice of a changed address for receiving written notices, pursuant to the lease. At best, Feigenbaum raises a factual dispute that the trial court resolved in favor of Hall. Substantial evidence supports the trial court's findings.

Feigenbaum also argues that Hall's service of a 3-day notice to pay or vacate, when the lease required 20 days' notice of default before a legal action could be filed, invalidated service and precluded the trial court from obtaining personal or subject matter jurisdiction. He relies on Community Investments, Ltd. v. Safeway Stores, Inc.,[20] where the plaintiff landlord served the commercial tenant with a 10-day notice when the lease required 20 days' notice to cure any default. This reliance is misplaced. In Community Investments, what the court

---

[19] See 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.80, at 441 (2d ed. 2004) ("RCWA 59.12.040 is quite explicit about the manner of serving notice. . . . [I]f service cannot be made by the first method, or if either step of the second method cannot be accomplished, then the person serving notice should affix a copy in a 'conspicuous place' on the premises; hand a copy to any person 'there residing' if such a person is present; and mail a copy to the tenant at the demised premises.").

[20] 36 Wn. App. 34, 36-37, 671 P.2d 289 (1983).

found improper was not the form of the notice but the insufficient waiting period: the landlord commenced a legal action 19 days after giving notice.[21]

First Union Management, Inc. v. Slack[22] is on point. In First Union, defendant tenants contended that their landlord's 3-day notice was improper because their lease required 10 days' notice.[23] The court disagreed, concluding that the clause in the lease did not address notice required in an unlawful detainer action but only specified that the landlord could not bring suit under the lease unless the tenants failed to pay rent within 10 days of the due date, i.e., when tenants were in default for the prescribed period.[24] This court noted that the tenants did not allege that the landlord terminated their lease or their right of possession before the requisite 10-day period had elapsed.[25]

Hall's notice was titled "3-Day Notice to Pay Rent or Vacate." However, Hall did not exercise his rights by commencing a legal action until December 1, more than 20 days after serving notice to Feigenbaum. Feigenbaum does not contend that he was misled or deceived by the language of the notice or that Hall terminated his lease or his right of possession before 20 days had elapsed.[26]

---

[21] Cmty. Invs., 36 Wn. App. at 37-38.

[22] 36 Wn. App. 849, 679 P.2d 936 (1984).

[23] First Union Mgmt., 36 Wn. App. at 859.

[24] First Union Mgmt., 36 Wn. App. at 859.

[25] First Union Mgmt., 36 Wn. App. at 859.

[26] See Davis v. Jones, 15 Wn.2d 572, 576-78, 131 P.2d 430 (1942) (finding notice valid when the initial notice and summons "performed the function

Feigenbaum made no attempts to cure his default, either within 3 days or 20 days. Hall complied with both RCW 59.12.040 and the terms of the lease in giving Feigenbaum notice of default.

RCW 59.12.070 describes the requirements for the unlawful detainer summons and complaint. The statute specifies that

> [a] summons must be issued as in other cases, returnable at a day designated therein, which shall not be less than seven nor more than thirty days from the date of service, except in cases where the publication of summons is necessary, in which case the court or judge thereof may order that the summons be made returnable at such time as may be deemed proper, and the summons shall specify the return day so fixed.

After attempting to personally serve Feigenbaum from December 1 to 3, Hall obtained an order from the trial court permitting him to post and mail the summons and complaint to the premises. The court also set a show cause hearing for December 17. Hall mailed the pleadings on December 6 and posted them at the premises on December 7.

Feigenbaum contends that he had 90 days to answer the summons under CR 4(d)(4) and that Hall's service of the mailed eviction summons did not give the notice required by CR 6(e).[27] While the civil rules govern unlawful detainer

---

of giving notice according to the statutory requirements with such particularity as not to deceive or mislead").

[27] CR 6(e) provides,
**Additional Time After Service by Mail.** Whenever a party has the right or is required to do some act or take some proceedings

proceedings, where the civil rules conflict with the unlawful detainer statute they are inapplicable because unlawful detainer actions are "special proceedings" within the meaning of CR 81(a).[28] RCW 59.12.070 requires the return date for an unlawful detainer summons "shall not be less than seven nor more than thirty days from the date of service." This is consistent with the statute's purpose as a summary means of resolving leased property disputes. Feigenbaum admits receiving the summons and complaint by mail on December 9. The return date for the show cause hearing was December 17. Thus, Hall served Feigenbaum not less than 7 days before the summons's return date. Feigenbaum received sufficient notice of the return date to respond to the summons and complaint. We conclude that statutory process was proper and thus that the trial court properly exercised its jurisdiction.

The Requirement of an Injunction Bond

On April 22, 2011, the court denied Feigenbaum's motions to dismiss and to require the court to set a bond for the preliminary injunction and a bond for the writ of restitution. Feigenbaum assigns error to the court's issuance of the injunction and writ without requiring a bond.

---

within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period.
[28] Christensen, 162 Wn.2d at 374.

RCW 7.40.080 states, "No injunction or restraining order shall be granted until the party asking it shall enter into a bond, in such a sum as shall be fixed by the court or judge granting the order." The Washington State Supreme Court has held that while the amount of a bond for an injunction under RCW 7.40.080 is within the discretion of the trial court,[29] the requirement of an injunction bond is mandatory.[30]

Similarly, RCW 59.12.090 requires that before a writ of restitution is issued prior to judgment, the plaintiff "shall execute to the defendant and file in court a bond in such sum as the court or judge may order."

The form order for the temporary restraining order and order to show cause entered by the trial court had two "check the box" alternatives: "without posting of a bond by the Plaintiff" and "upon posting of a bond in the amount of $____ by Plaintiff." The trial court here checked the space next to the first alternative. Neither the court's order granting the preliminary injunction nor its order authorizing the writ of restitution required a bond. The trial court erred by not ordering a bond as required by chapter 59.12 RCW and chapter 7.40 RCW.

---

[29] See RCW 4.44.470; Hockley v. Hargitt, 82 Wn.2d 337, 345, 510 P.2d 1123 (1973).

[30] Evar, Inc. v. Kurbitz, 77 Wn.2d 948, 951, 468 P.2d 677 (1970); Irwin v. Estes, 77 Wn.2d 285, 286, 461 P.2d 875 (1969).

"'[E]rror is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[31] Feigenbaum demonstrates no prejudice from this error. Therefore, we do not consider this issue further.

Conversion of the Case from Unlawful Detainer to Ordinary Civil Case

In an unlawful detainer action, "'the court sits as a special statutory tribunal to summarily decide the issues authorized by statute and not as a court of general jurisdiction with the power to hear and determine other issues.'"[32] Due to the summary nature of unlawful detainer proceedings, other claims, such as counterclaims, are generally not permitted.[33] However,

> "[w]here the right to possession ceases to be at issue at any time between the commencement of an unlawful detainer action and trial of that action, the proceeding may be converted into an ordinary civil suit for damages, and the parties may then properly assert any cross claims, counterclaims, and affirmative defenses."[34]

The trial court "has inherent power to fashion the method by which an unlawful detainer action is converted to an ordinary civil action."[35]

---

[31] State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)).

[32] Angelo Prop. Co. v. Hafiz, 167 Wn. App. 789, 808-09, 274 P.3d 1075 (quoting Granat v. Keasler, 99 Wn.2d 564, 571, 663 P.2d 830 (1983)), review denied, 175 Wn.2d 1012 (2012).

[33] Munden, 105 Wn.2d at 45 (quoting Granat, 99 Wn.2d at 570).

[34] Munden, 105 Wn.2d at 45-46.

[35] Munden, 105 Wn.2d at 47.

Feigenbaum paid no rent after his deposit of $14,400 into the registry of the court in December 2010. The court entered an order for a writ of restitution restoring the property to Hall on January 7, 2011. We hold that the trial court, finding that possession of the premises was no longer at issue, acted within its discretion when it converted the case from an unlawful detainer to an ordinary civil action for damages on February 10, 2012.

The Order on Summary Judgment and Award of Damages

Feigenbaum claims the court erred in entering summary judgment awarding Hall damages, statutory costs, and attorney fees. This court reviews de novo a trial court's summary judgment order. We engage in the same inquiry as the trial court, considering the facts and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[36] "Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[37]

---

[36] Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 381, 46 P.3d 789 (2002).
[37] Phillips v. King County, 136 Wn.2d 946, 956, 968 P.2d 871 (1998); CR 56(c).

After hearing oral argument on 12 separate occasions and reviewing pleadings, motions, memoranda, declarations, and affidavits from both parties, the trial court found that Feigenbaum was in breach of the lease for nonpayment of rent. The court found that Hall did not breach or default on any of his obligations under the lease and that he mitigated damages by reletting the premises.

Feigenbaum conceded to the court that he had not complied with the court's order to deposit future rent into the court's registry. In spite of over two years of litigation, Feigenbaum raised no genuine issue of any material fact regarding his unlawful detainer of the premises and breach of the lease. We hold that the trial court did not err in granting summary judgment to Hall.

The trial court awarded Hall $136,807.29, comprised of $108,969.00 for rent due under the lease, $21,016.00 for the deficiency between Feigenbaum's rent and the rent paid by the new lessee during the balance of Feigenbaum's lease term, and $6,822.29 for Hall's costs for mitigation and cleaning.

The lease provided that in case of Feigenbaum's default, Hall had the right to either

> terminate the Lease and re-enter the Premises, or . . . without
> terminating this Lease, re-enter said Premises, and sublet the
> whole or any part thereof for the account of the Lessee upon as
> favorable terms and conditions as the market will allow for the
> balance of the term of this Lease and Lessee covenants and

agrees to pay to Lessor any deficiency arising from a re-letting of the Premises at a lesser amount than herein agreed to.

RCW 59.12.170 provides that the court "shall assess the damages occasioned to the plaintiff . . . alleged in the complaint and proved on the trial, and . . . find the amount of any rent due."[38]

RCW 59.12.170 entitles Hall to damages and "any rent due," and the lease entitles him to any deficiency in rent payments arising from the need to relet following default. Feigenbaum failed to raise any genuine issue of material fact about what he owed Hall. We affirm the trial court's order on summary judgment and award of damages and costs to Hall.

Attorney Fees

Feigenbaum also appeals the trial court's award to Hall of $43,000 in reasonable attorney fees and costs. This court applies a two-part review to awards or denials of attorney fees: (1) the court reviews de novo whether a legal basis exists for awarding attorney fees by statute, under contract, or in equity and (2) the court reviews the reasonableness of an attorney fee award for abuse of discretion.[39] A trial court abuses its

---

[38] RCW 59.12.170 also provides for double rent and damages; Hall has waived this claim on appeal.

[39] Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

discretion when its decision is manifestly unreasonable or based on untenable grounds.[40]

Here, the lease provides for attorney fees and costs to the prevailing party. In determining the appropriate amount, the trial court apparently took into consideration not only Hall's request but also Feigenbaum's objection to the inclusion of fees associated with vacated judgments. We hold that Hall was entitled to attorney fees as a matter of law and that the trial court did not abuse its discretion in its award.

Hall requests fees on appeal. A contract providing for an award of attorney fees at trial also supports such an award on appeal. Hall is the prevailing party in this appeal. Subject to his compliance with RAP 18.1, we award Hall his attorney fees on appeal in an amount to be determined by a commissioner of this court.

Affirmed.

_Leach, C. J._

WE CONCUR:

_____

_____

[40] _Dix v. ICT Grp., Inc._, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

-17-