# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RANDY REYNOLDS & ASSOCIATES, INC. dba REYNOLDS REAL ESTATE,<br><br>Appellant,<br><br>v.<br><br>KASEY HARMON aka KASEY HARMAN, Any Subtenants, and All Others Acting By Or Through Them,<br><br>Respondents. | No. 49588-1-II<br><br><br><br><br>PUBLISHED OPINION |

JOHANSON, P.J. — Randy Reynolds & Associates Inc. (Reynolds) appeals from the superior court commissioner's ex parte order staying a writ of restitution in an unlawful detainer action that Reynolds brought against a tenant and waiving bond pending a hearing on the merits. Even though the issues raised are moot, we reach the merits of the case because they raise issues of important public policy that are likely to recur. We hold that the superior court commissioner erred when she heard the ex parte motion to stay execution of the writ of restitution and waived the bond without notice to Reynolds in violation of the notice and hearing requirements provided in RCW 59.18.390(1). Consequently, we reverse.

No. 49588-1-II

FACTS

In July 2016, Reynolds served Kasey Harmon with a 20-day notice to terminate her tenancy in compliance with the rental agreement and RCW 59.12.030(2). When Harmon failed to timely vacate the property, Reynolds filed and served an unlawful detainer complaint seeking, among other things, restitution of the premises. On September 16, after Harmon failed to appear pursuant to proper notice, the superior court commissioner entered an order of default and judgment granting a writ of restitution in favor of Reynolds.

The sheriff posted notice of the writ at Harmon's residence on September 19. That same day, Harmon brought an ex parte motion to stay execution of the writ. The superior court commissioner stayed execution of the writ based on Harmon's claim that she answered before the case was filed and default was entered, and the court commissioner ordered a show cause hearing. The order granting the stay was on a preprinted form that stated, "Bond is waived until the hearing on the merits of this motion," and Harmon did not post a bond. Clerk's Papers (CP) at 24.

In support of its writ, Reynolds' pleadings asserted that the ex parte hearing to stay the writ was improper and that the stay was invalid because Harmon was required by RCW 59.18.390(1) to post a bond before retaining possession of the premises and obtaining a stay of a writ of restitution. At the show cause hearing, the superior court commissioner held that Harmon had no legally sufficient challenge to the writ of restitution, and it lifted the stay and granted a supplemental judgment including attorney fees and costs to Reynolds. The writ was then executed and Harmon was evicted.

2

Reynolds appeals from the superior court commissioner's ex parte order that granted a stay of the writ of restitution, waived the bond, and ordered a show cause hearing.[1]

ANALYSIS

I. MOOTNESS

Reynolds acknowledges that the matters presented are moot but argues that we should consider them because they involve "issues of continuing and substantial public interest." Br. of Appellant at 6. We agree.

A. RULES OF LAW

A case is moot if "'the court can no longer provide effective relief.'" *In re Det. of M.W.*, 185 Wn.2d 633, 648, 374 P.3d 1123 (2016) (quoting *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012)). Generally, we do not consider cases that are moot or present abstract questions. *State v. Beaver*, 184 Wn.2d 321, 330, 358 P.3d 385 (2015).

Even when cases are moot, we have discretion to address questions "of continuing and substantial public interest." *M.W.*, 185 Wn.2d at 648. When considering whether a case involves issues of continuing and substantial public interest, we consider (1) "'the public or private nature of the question presented,'" (2) "'the desirability of an authoritative determination for the future guidance of public officers,'" and (3) "'the likelihood of future recurrence of the question.'" *M.W.*, 185 Wn.2d at 648 (internal quotation marks omitted) (quoting *Hunley*, 175 Wn.2d at 907).

---

[1] Reynolds raises no arguments on appeal challenging the order of a show cause hearing and challenges only the court's granting the ex parte motion to stay the writ of restitution and the waiver of the bond contained in the order.

Matters involving statutory interpretation tend to be more public in nature, more likely to arise again, and more helpful to public officials. *Hart v. Dep't of Soc. & Health Serv.*, 111 Wn.2d 445, 449, 759 P.2d 1206 (1988). And courts may consider "'the likelihood that the issue will escape review because the facts of the controversy are short-lived.'" *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004) (quoting *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994)).

### B. ANALYSIS

Because the superior court commissioner already lifted the writ's stay and Harmon has been evicted, we can no longer provide effective relief regarding the stay and the waiver of bond pending the show cause hearing. *See M.W.*, 185 Wn.2d at 648. As such, the case is moot. *M.W.*, 185 Wn.2d at 648.

However, the three factors for determining whether a matter is of continuing and substantial public interest each weigh in favor of a conclusion that we should consider the issues. *See M.W.*, 185 Wn.2d at 648. First, the questions presented are public because they involve statutory interpretation to determine the proper notice and hearing procedures for certain proceedings under the Residential Landlord-Tenant Act of 1973, ch. 59.18 RCW. *See Hart*, 111 Wn.2d at 449.

Second, it is desirable to have an authoritative determination of proper procedures for obtaining a stay of a writ of restitution and satisfying the bond requirement under RCW 59.18.390(1) to guide future public officers. *See M.W.*, 185 Wn.2d at 648. The superior court commissioner here heard the motion to stay ex parte and waived the bond requirement on a preprinted form that is evidently used routinely in this county in orders to stay writs of restitution.

4

It is desirable to provide guidance to the superior court so that its procedures may be adjusted to conform to statutory requirements.

Third, it is likely that similar questions will reoccur. *See M.W.*, 185 Wn.2d at 648. Superior courts routinely adjudicate unlawful detainer actions by landlords, so these issues will certainly be raised again.

We may also choose to hear the merits because eviction proceedings are designed to be an expedited process. *Christensen v. Ellsworth*, 162 Wn.2d 365, 375-76, 173 P.3d 228 (2007) ("[T]he purpose of the unlawful detainer statute . . . is to provide a landlord with a speedy, efficient procedure by which to obtain possession of the premises after a breach by the tenant."). As such, the issues presented are likely to escape review. *See In re Marriage of Horner*, 151 Wn.2d at 892. Because Reynolds raises issues of continuing and substantial public interest, we choose to reach the merits of the issues. *See M.W.*, 185 Wn.2d at 648-49.

## II. CR 5(a)

Reynolds argues that the superior court commissioner erred when it heard, ex parte, the motion to stay execution of the writ of restitution.[2] Specifically, Reynolds asserts that its right to notice for "'every written motion other than one which may be heard ex parte'" under CR 5(a) was violated when the superior court commissioner heard ex parte motions prohibited by Code of

---

[2] Reynolds also argues that the stay was "void ab initio" under the common law. We do not review issues that are not adequately developed in the briefs. *State v. Corbett*, 158 Wn. App. 576, 597, 242 P.3d 52 (2010). Reynolds provides only three sentences regarding the "void ab initio" issue in his brief, and the single case he cites examines matters under the due process clause rather than the common law doctrine of "void ab initio." Because Reynolds provides inadequate briefing, we decline to discuss the matter further.

No. 49588-1-II

Judicial Conduct (CJC) Rules 2.9(A) and 2.6(A).[3]  Br. of Appellant at 13 (quoting CR 5(a)).  We agree.

## A.  RULES OF LAW

We review both the interpretation and the application of court rules de novo.  *State v. McEnroe*, 174 Wn.2d 795, 800, 279 P.3d 861 (2012).  We interpret court rules using principles of statutory interpretation.  *Jafar v. Webb*, 177 Wn.2d 520, 527, 303 P.3d 1042 (2013).  However, when interpreting court rules, we are not concerned about usurping the role of the legislature because we are uniquely positioned to declare the correct interpretation of any court-adopted rule. *Jafar*, 177 Wn.2d at 527.  "If the rule's meaning is plain on its face, we must give effect to that meaning as an expression of the drafter's intent."  *Jafar*, 177 Wn.2d at 526.  When a court rule is ambiguous, we must discern the drafter's intent by "'reading the rule as a whole, harmonizing its provisions, and using related rules to help identify'" the intended meaning.  *Jafar*, 177 Wn.2d at 526-27 (quoting *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007)).  The use of "may" in a statute indicates that the provision is permissive and not binding, while the use of "shall" indicates a mandatory provision.  *Scannell v. City of Seattle*, 97 Wn.2d 701, 704, 648 P.2d 435 (1982).

---

[3] Reynolds argues that the superior court violated "Canons" 2.6(A) and 2.9(A) of the CJC by hearing and granting Harmon's ex parte motions.  It is notable that we may not *directly* remedy a violation of the CJC.  The Commission on Judicial Conduct is responsible for adjudicating complaints regarding CJC violations.  *See* STATE OF WASHINGTON, COMMISSION ON JUDICIAL CONDUCT, https://www.cjc.state.wa.us/ (last visited Oct. 24, 2017).  As such, the judicial conduct argument will be addressed as it relates to a possible violation of the civil rules requiring notice to parties.

Improper ex parte communication under the CJC may provide grounds for a new trial under CR 59(a)(1). *Buckley v. Snapper Power Equip. Co.*, 61 Wn. App. 932, 938, 813 P.2d 125 (1991). In addition, the CJC may provide a basis for a definition of ex parte contacts that may be used to determine whether aggrieved parties are entitled to a remedy separate from the judicial code. *See State v. Watson*, 155 Wn.2d 574, 578-79, 122 P.3d 903 (2005).

B. ANALYSIS

1. NOTICE UNDER CR 5(a)

Reynolds asserts that CR 5(a) is "clear on its face" such that "[n]otice of the motion and the hearing were required." Br. of Appellant at 13. We agree.

CR 5(a) states that "every written motion other than one which may be heard ex parte . . . shall be served upon each of the parties." In addition, under Rule 2.9(A) of the CJC,

> [a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, before that judge's court except as follows:
> (1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters . . . is permitted, provided:
> (a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and
> (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

CR 5(a) creates a general rule that "every written motion other than one which *may* be heard ex parte . . . *shall* be served upon each of the parties." (Emphasis added.) Because "shall" creates a mandatory obligation, CR 5(a) *requires* every motion to be "served upon each of the parties," excepting those which "*may* be heard ex parte." CR 5(a) (emphasis added); *see Scannell*, 97 Wn.2d at 704. CR 5(a) does not provide which motions "may" be heard ex parte. *See* CR 5(a).

7

But "may" indicates a permissive provision. *Scannell*, 97 Wn.2d at 704. Thus, CR 5(a) requires every motion to be served upon each party, except those *permitted* to be heard ex parte. And it follows that, if an ex parte motion is permitted, there must be some source of authority permitting it. Thus, the plain meaning of CR 5(a) is that there must be a source of legal authority permitting the motion to be heard ex parte, and absent such authority, notice is required. *See* CR 5(a). There is no legal authority authorizing a court to hear an ex parte motion to stay execution of a writ of restitution. *See* ch. 59.18 RCW.

2.      CODE OF JUDICIAL CONDUCT

Reynolds also argues that the ex parte motion and hearing were prohibited ex parte communication because they violated the CJC. We may look to the CJC to determine whether a motion may be heard ex parte under the Civil Rules. *See Buckley*, 61 Wn. App. at 938; *Watson*, 155 Wn.2d at 575-79.

For example, in *Buckley*, Division One of this court stated that a judge's improper ex parte communication with a guardian ad litem in violation of the CJC was grounds for a new trial because it "prevented appellant from having a fair hearing." 61 Wn. App. at 938. The court also stated that CR 59(a)(1), which provided that a new trial may be granted if proceedings were irregular, authorizes a new trial for violation of the CJC's prohibition on ex parte contacts. *Buckley*, 61 Wn. App. at 938-39.

Similarly, our Supreme Court, in *Watson*, interpreted the term "ex parte communication" to determine whether a memorandum about drug offender sentencing by a county prosecuting attorney to all county superior court judges was an invalid ex parte contact. 155 Wn.2d at 575-77. Relevant here, the court first analyzed the CJC to determine if it provided a definition of ex parte

communication. *See Watson*, 155 Wn.2d at 578-79. At that time, the CJC did not provide a definition of prohibited ex parte communications, but the case suggests that the CJC can provide a basis for a definition of ex parte contacts that may be used to determine whether aggrieved parties are entitled to a remedy separate from the judicial conduct code. *See Watson*, 155 Wn.2d at 578-79.

3. IMPROPER EX PARTE COMMUNICATION

The CJC states that a motion is properly heard ex parte if it concerns administrative or scheduling matters or if the communication is heard for emergency purposes. CJC Rule 2.9(A). In addition, to be proper, the ex parte communication may not address substantive matters, and the judge must reasonably believe that "no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication." CJC Rule 2.9(A)(1)(a).

Here, Reynolds had no notice of the motion or hearing on Harmon's ex parte motion to stay enforcement of the writ, which would allow Harmon to retain possession of the premises. As Reynolds asserts, this is not a "scheduling" or "administrative" matter.

Even considering Harmon's ex parte motion as an emergency, given that she was going to lose possession of her residence if the sheriff executed the writ of restitution, it was still improper. An ex parte communication, even one for "emergency purposes," is, however, authorized only if the communication does not "address substantive matters" and if the judicial officer "reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication." CJC Rule 2.9(A)(1), (1)(a). The motion here addressed substantive matters because the matter impacted Reynolds' right to regain possession of its property under the writ of restitution. And the motion gave Harmon a substantive advantage because it allowed her

to remain on the premises until the subsequent show cause hearing. Thus, the ex parte communication was not proper under the CJC. CJC Rule 2.9(A).

Accordingly, CR 5(a) required that Reynolds receive notice of the motion. Reynolds did not receive notice of the motion to stay, so it was denied proper notice.[4]

### III. RCW 59.18.390(1) REQUIRES NOTICE AND HEARING

Reynolds next argues that it did not receive mandatory notice of the hearing and opportunity to be heard regarding the bond as required under RCW 59.18.390(1). We hold that the superior court commissioner erred by waiving the bond in violation of notice and hearing requirements provided in RCW 59.18.390(1).

### A. RULES OF LAW

We review the meaning of a statute de novo. *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 592, 278 P.3d 157 (2012). When interpreting a statute, our goal is to "ascertain and carry out the legislature's intent." *Jongeward*, 174 Wn.2d at 592. If a statute's meaning is plain on its face, we must "'give effect to that plain meaning as an expression of legislative intent.'" *Jongeward*, 174 Wn.2d at 594 (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). The plain meaning is determined based on all of the statutory language. J*ongeward*, 174 Wn.2d at 594. "Plain meaning may also be discerned from 'related statutes which disclose legislative intent about the provision in question.'" *Jongeward*, 174 Wn.2d at 594 (quoting *Campbell & Gwinn*, 146 Wn.2d at 11). "Shall," when used in a statute, is presumptively

---

[4] Reynolds also argues that the superior court commissioner erred by failing to impose a bond under RCW 59.18.390(1). Because we reverse on other grounds, we do not reach this issue.

imperative and operates to create a duty, rather than to confer discretion. *In re Parental Rights to K.J.B.*, 187 Wn.2d 592, 601, 387 P.3d 1072 (2017).

RCW 59.18.390(1) provides in relevant part, "The plaintiff . . . shall have notice of the time and place where the court or judge thereof shall fix the amount of the defendant's bond, and shall have notice and a reasonable opportunity to examine into the qualification and sufficiency of the sureties upon the bond before the bond shall be approved by the clerk."

## B.  ANALYSIS

The landlord "shall" have notice of the time and place of the hearing at which the tenant's bond is set and "shall have notice and a reasonable opportunity to examine into the qualification and sufficiency of the sureties upon the bond before the bond shall be approved." RCW 59.18.390(1). Unless there is contrary evidence of legislative intent, the word "shall" is presumed to be imperative; thus, the presumption here is that "before" the bond amount is set, the landlord is entitled to notice of the bond hearing and an opportunity to be heard regarding the sufficiency of the sureties. *See K.J.B.*, 187 Wn.2d at 601. Because landlords are entitled to notice and hearing required before the court approves the bond, it follows that landlords must also be entitled to notice and a hearing before the bond is waived altogether. *See* RCW 59.18.390(1).

Here, Harmon brought a motion to stay execution of the writ of restitution without notice to Reynolds. The superior court commissioner heard the motion ex parte and waived the bond requirement without Reynolds receiving notice of the hearing nor an opportunity to inquire into the adequacy of the bond to secure Reynolds' interests. Thus, the superior court commissioner

erred as a matter of law when the commissioner waived the bond in violation of statutory requirements.[5]  *See* RCW 59.18.390(1).

## IV.  ATTORNEY FEES

Reynolds requests attorney fees and costs, arguing that its rental agreement provides that the prevailing party is entitled to reasonable attorney fees and costs accrued on appeal.  We agree.

Under RAP 18.1(a), "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule."  "A contract providing for an award of attorney fees at trial . . . supports such an award on appeal."  *Hall v. Feigenbaum*, 178 Wn. App. 811, 827, 319 P.3d 61 (2014).

Under Reynolds' rental agreement with Harmon, "the prevailing party shall be entitled to recover its reasonable attorney fees and court costs incurred in the event any action, suit or proceeding commenced to enforce the terms of this Agreement."  CP at 13.  Reynolds' unlawful detainer action is a "proceeding commenced to enforce the terms" (CP at 13) of the rental agreement, so the prevailing party is entitled to attorney fees and costs, including those associated with the appeal.  *See Hall*, 178 Wn. App. at 827.  Reynolds is the prevailing party in this appeal. Thus, subject to its compliance with RAP 18.1, we award Reynolds its attorney fees on appeal in an amount to be determined by a commissioner of this court.  *See Hall*, 178 Wn. App. at 827.

---

[5] Reynolds argues that the superior court commissioner violated Reynolds' due process rights under article I, section 3 of the Washington Constitution when the commissioner heard matters that materially affected Reynolds' rights without providing it with an opportunity to be heard.  We decline to reach this issue because we decide this case on nonconstitutional grounds.  *See Wash. State Farm Bureau Fed. v. Gregoire*, 162 Wn.2d 284, 291 n.7, 174 P.3d 1142 (2007).

No. 49588-1-II

We hold that the superior court commissioner violated CR 5(a) and RCW 59.18.390(1) when the commissioner heard the ex parte motion to stay execution of the writ of restitution and waived the bond without notice to Reynolds. We reverse.

_Johanson, J._
JOHANSON, P.J.

We concur:

_Lee, J._
LEE, J.

_Melnick, J._
MELNICK, J.

13